Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCHMITT, Individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| MICRO FOCUS INTERNATIONAL PLC, CHRISTOPHER HSU, STEPHEN MURDOCH, MIKE PHILLIPS, KEVIN LOOSEMORE, NILS BRAUCKMANN, KAREN SLATFORD, RICHARD ATKINS, AMANDA BROWN, SILKE SCHEIBER, DARREN ROOS, GISELLE MANON, AND JOHN SCHULTZ, | |
| Defendants. | |

Plaintiff David Schmitt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Micro Focus International plc ("Micro Focus" or the "Company"),

analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities who purchased or acquired Micro Focus American Depositary Shares ("ADSs"), pursuant or traceable to the Company's Registration Statement and Prospectus (together, the "Offering Documents") issued in connection with the merger of Micro Focus with Hewlett Packard Enterprise Company ("HPE"), and their subsidiaries, pursuant to which Micro Focus combined with the software business segment of HPE (the "Merger"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under the Securities Act of 1933 (the "Securities Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o, and the rules and regulations of the SEC promulgated thereunder.

3.      This Court has jurisdiction over this action pursuant to §22 of the Securities Act (15 U.S.C. §77v) and 28 U.S.C. §1331.

4.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) as the Company conducts business in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, which is incorporated by reference herein, acquired Micro Focus ADSs pursuant or traceable to the Merger and suffered damages.

7.     Defendant Micro Focus is an infrastructure software company which develops, sells, and supports software products and solutions to federal, airlines, and healthcare internationally. The Company is incorporated in the United Kingdom and its headquarters are located at The Lawn, 22-30 Old Bath Road, Newbury, Berkshire RG14 1QN, United Kingdom. Micro Focus conducts substantial business in the United States, including California and maintains an office in this judicial district. Micro Focus ADSs trade on the New York Stock Exchange ("NYSE") under the ticker "MFGP."

8.     Defendant Christopher Hsu ("Hsu") served as the Chief Executive Officer ("CEO") and a director of Micro Focus beginning on September 1, 2017, when the Merger closed, and assumed these positions in the Offering Documents. Prior to becoming the CEO of Micro Focus, Hsu served as the Chief Operating Officer ("COO") of HPE and the Executive Vice President and General Manager of HPE's software business segment, HPE Software, which was acquired by Micro Focus in the Merger. On March 19, 2018, Micro Focus announced that Hsu was resigning in order to "spend more time with his family and pursue another opportunity" only six-and-a-half months after the Merger closed.

9.     Defendant Stephen Murdoch ("Murdoch") served as the CEO and a director of Micro Focus until he was replaced in those positions by Hsu as a result of the Merger, after which Murdoch became the Company's COO. Murdoch became CEO and a director of the Company after defendant Hsu's resignation in March 2018. Murdoch signed the false and misleading Registration Statement.

10.     Defendant Mike Phillips ("Phillips") served as the Chief Financial Officer ("CFO") and a director of Micro Focus at the time of the Merger. On January 8, 2018, Micro Focus announced that Phillips would be leaving his CFO role to serve as the Company's Director of

Mergers and Acquisitions ("M&A"). Phillips signed the false and misleading Registration Statement.

11. Defendant Kevin Loosemore ("Loosemore") served as the Executive Chairman of Micro Focus at the time of the Merger. Loosemore signed the false and misleading Registration Statement.

12. Defendant Nils Brauckmann ("Brauckmann") served as the CEO of Micro Focus's open-source product portfolio, termed its "SUSE Products" segment, and a director of the Company's board (the "Board") at the time of the Merger, although he left the Board following the Merger. Brauckmann signed the false and misleading Registration Statement.

13. Defendant Karen Slatford ("Slatford") served as a director of the Company at the time of the Merger. Slatford signed the false and misleading Registration Statement.

14. Defendant Richard Atkins ("Atkins") served as a director of the Company at the time of the Merger. Atkins signed the false and misleading Registration Statement.

15. Defendant Amanda Brown ("Brown") served as a director of the Company at the time of the Merger. Brown signed the false and misleading Registration Statement.

16. Defendant Silke Scheiber ("Scheiber") served as a director of the Company at the time of the Merger. Scheiber signed the false and misleading Registration Statement.

17. Defendant Darren Roos ("Roos") served as a director of the Company at the time of the Merger. Roos signed the false and misleading Registration Statement.

18. Defendant Giselle Manon ("Manon") served as the authorized U.S. representative of the Company at the time of the Merger. Manon signed the false and misleading Registration Statement.

19. Defendant John Schultz ("Schultz"), as stated in the Offering Documents, would become a director of the Company following the Merger. On December 20, 2017, Micro Focus announced that Schultz would leave the Board.

20. The defendants referenced above in ¶¶8-19 are collectively referred to herein as the "Individual Defendants." Other than Hsu and Schultz, the Individual Defendants signed the Registration Statement. Furthermore, as directors and/or executive officers of the Company, the

Individual Defendants participated in the solicitation and sale of Micro Focus ADSs to shareholders of HPE as consideration in the Merger for their own benefit and the benefit of Micro Focus.

21.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

22.     Micro Focus is a software development company that assists businesses in a variety of technological tasks. The Company helps organizations leverage existing information technology ("IT") investments, enterprise applications and emerging technologies to address complex and evolving business requirements, including the protection of corporate information. The Company's legacy product lines, termed its "Existing Products" segment, include products in development and mainframe solutions, host connectivity, identity and access security, development and IT operations management tools, and collaboration and networking. The Company's SUSE Products segment provides interoperable Linux, cloud infrastructure and storage solutions.

23.     For the six months ended October 31, 2016, the Company's Existing Products and SUSE Products reporting segments generated $684 million in total revenue for the Company, with 78% of this revenue coming from Micro Focus's Existing Products portfolio. Of the $537.3 million in Existing Products revenues for the quarter, approximately $364.2 million came from maintenance services, $146.9 million from licensing, and $26.2 million from consultancy.

24.     On September 7, 2016, Micro Focus issued a press release announcing a proposed merger with HPE Software, the software business segment of HPE. The transaction was valued at $8.8 billion, larger than Micro Focus's market capitalization at the time, and was projected to triple the Company's revenues. According to the deal terms, the Company would issue newly registered ADSs to shareholders of HPE as consideration in the Merger, such that immediately following the completion of the Merger, HPE shareholders would own 50.1% of the fully diluted share capital of the combined company. In addition, HPE would receive $2.5 billion financed through newly incurred indebtedness of HPE Software, and Micro Focus shareholders would receive a $400 million return of value prior to completion.

25.     The press release described the deal as a "[r]are opportunity to increase significantly Micro Focus' scale and breadth through the combination with a business operating in adjacent and complementary product areas with similar characteristics and benefitting from a high proportion of recurring revenues and strong cash conversion." The release also stated that the Merger would create "one of the world's largest pure-play infrastructure software companies" with "annual revenues of US$4.5 billion and EBITDA of US$1.35 billion." Defendant Loosemore, Micro Focus's Executive Chairman at the time, was quoted in the release as stating that the Merger "represents a compelling opportunity to create significant value for both companies' shareholders."

26.     A significant portion of HPE Software's business that was to be sold to Micro Focus in the Merger was acquired by a predecessor entity to HPE, Hewlett-Packard Company ("HP"), in 2011 from British software firm Autonomy Corporation plc ("Autonomy") in a deal valued at $10.3 billion.[1] In 2012, HP recorded an $8.8 billion impairment charge related to the write down of goodwill and intangible assets from its acquisition of Autonomy. HP subsequently accused Autonomy of fraud and accounting misrepresentations, and the fallout from HP's acquisition of Autonomy resulted in fraud charges against Autonomy's former CFO by the U.S. Department of Justice, as well as other regulatory investigations into the deal and litigation between HP and former officers of Autonomy.

27.     HPE and Micro Focus represented that the past problems with Autonomy would not impact the quality of the assets received by Micro Focus in the Merger. HP and HPE had sold off the majority of Autonomy assets, and HPE only retained a relatively small portion of these assets at the time of the Merger. In July 2017, defendant Loosemore reassured investors concerned that "Autonomy could be a significant part of HPE," that "[t]he current revenues from Autonomy products in HPE Software are less than 10% of the revenues of HPE, and most of those are SaaS [software as a service]." He continued in pertinent part:

---

[1] HP and HPE split into two separate companies in 2015.

Class Action Complaint for Violation of the Federal Securities Laws

> Now some of you will now go and look and see what the revenues of Autonomy were when it was sold to HPE, and that will raise a very interesting question as to which of the 2 managements were right in their prognosis of, was it inflated revenue or was it mismanaged after the event? I don't actually care. We know what we're getting, and *it's less than 10% of the revenues.[2]*

28. Micro Focus shareholders approved the proposal relating to the Merger on May 26, 2017. HPE shareholders did not vote on the deal.

29. Micro Focus had an unusually long timeline to close the Merger. The Company projected that the Merger would be consummated in the third quarter of 2017, nearly a year after it was first announced. The Company and its representatives reassured shareholders that the time was being used to ensure a successful integration and transition into the combined company. For example, on July 12, 2017, Micro Focus held an earnings call to discuss its preliminary financial results for the fiscal quarter and year ended April 30, 2017. On the call, defendant Murdoch, who was then the CEO of the Company, stated that Micro Focus had employed significant integration teams "all managed under a common governance structure, tracking more than 10,000 very specific tasks through to completion" in order to lay out the operational aspects of the combined company. Similarly, Loosemore gave the following update on the integration progress: "The HPE transaction milestones completed, all regulatory approvals done, 99.99% shareholder approval; due to file the F-4 at the end of this week; prospectus due to go out fairly shortly; and you're seeing we've refinanced on fairly good terms." He stated that the Merger was expected to be completed September 1, 2017, and that the new business would be "fully integrate[d]" by November 1, 2017.[3]

30. On August 4, 2017, Micro Focus filed with the SEC on Form F-4 a registration statement for the ADSs to be issued in the Merger, which was amended on August 15, 2017 and declared effective that same day (the "Registration Statement"). On August 22, 2017, Micro Focus filed a prospectus for the ADSs to be issued in the Merger on Form 424B3, which incorporated and formed a part of the Registration Statement (the "Prospectus"). The Registration Statement and Prospectus are collectively referred to herein as the Offering Documents.

---

[2] Bold and italics throughout is for emphasis.

[3] As a result of the Merger, the fiscal year end for the Company was changed from April 30 to October 31 of the calendar year.

Class Action Complaint for Violation of the Federal Securities Laws

31.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

32.     The Offering Documents stated that the "market value of the Micro Focus ADSs to be issued" in the Merger equaled an estimated ***$6.6 billion*** (subject to the market price of Micro Focus shares as of closing), which implied an "***enterprise value for HPE Software of approximately $9.1 billion***."

33.     The Offering Documents provided "Micro Focus' Reasons for Engaging" in the Merger. The Offering Documents characterized the Merger as "***a rare opportunity to achieve a significant increase in Micro Focus' scale and breadth***, with the potential to ***deliver enhanced Total Shareholder Returns*** consistent with Micro Focus' stated objectives." Specifically, the Offering Documents stated that the Merger was expected to "***enhance Adjusted Earnings Per Share*** by April 30, 2019 and thereafter, with scope for further benefits as operational improvements are realized across the Enlarged Group." The Offering Documents also stated that "significant cost benefits will arise from reducing duplicated central costs, combining corporate support functions (where appropriate) and increasing efficiency across all functions." The Offering Documents listed additional purported benefits to Micro Focus as a result of the Merger, including, inter alia:

- ***create significantly greater scale and breadth of product portfolio*** covering largely adjacent areas of the software infrastructure market, thereby creating one of the world's largest pure-play infrastructure software companies;

- ***add a substantial recurring revenue base to Micro Focus' existing product*** portfolio, together with access to important new growth drivers and new revenue models; and

- ***accelerate operational effectiveness over the medium term***, through the alignment of best practices between Micro Focus and HPE Software in areas such as product development, support, product management, account management, and sales force productivity, as well as achieving operational efficiencies where appropriate.

Class Action Complaint for Violation of the Federal Securities Laws

34.     The Offering Documents also claimed that the Merger would benefit the businesses that Micro Focus would be acquiring from HPE, stating that a benefit of the Merger was "improved operating efficiencies to enable HPE Software, combined with Micro Focus*, to accelerate financial and operational performance*." The Offering Documents further stated that the combination would help alleviate certain "challenges" by separating HPE Software out from the larger HPE entity. As stated in the Offering Documents: "The HPE Board believed that a combination of HPE Software with Micro Focus would help address these challenges *by creating a more focused, nimble and scalable software business*, particularly given Micro Focus's historical experience with and focus on effectively managing portfolios of mature infrastructure software products." Other "anticipated benefits" of the Merger listed in the Offering Documents included the "convergence of businesses operating in adjacent and complementary product areas in order to better serve customers as a global provider of infrastructure software and *the improvement of the profitability of HPE Software through the application of Micro Focus' operating model*."

35.     Despite the significantly increased levels of indebtedness that the Company would incur as a result of the Merger (Micro Focus incurred $2.9 billion of new indebtedness and guaranteed $2.6 billion of additional indebtedness in Merger transactions), the Offering Documents stated that the Company's available liquidity and working capital will be sufficient for not less than the next 12 months following the date of this information statement/prospectus" and that it was "targeting to reduce" its initial pro forma net debt to Facility EBITDA ratio "to *its stated target of 2.5x Facility EBITDA* within two years following Closing" from the 3.3 ratio expected at Merger closing.

36.     Throughout the Offering Documents, the Company's "*successful track record* of executing and integrating selected strategic acquisitions" was repeatedly highlighted. For example, the Offering Documents stated that the Company's "acquisitions, in addition to delivering shareholder value through cash generation, have supplemented its organic growth strategy by broadening its technology proposition and extending the addressable market and customer base whilst also expanding the geographic reach of the business." In particular, the Offering Documents pointed to one recent acquisition by Micro Focus's SUSE Products segment of assets and

- 9 -

Class Action Complaint for Violation of the Federal Securities Laws

employees from HPE. The Offering Documents stated that the March 2017 acquisition "included HPE naming SUSE as its preferred Open Source partner for Linux, OpenStack and Cloud Foundry solutions." The Offering Documents continued, stating that "***[i]n each case, the Micro Focus Group's management team has successfully integrated the new business*** into the Micro Focus Group's then existing operations and executed a program of targeted cost cutting and/or restructuring ***in order to improve operational efficiencies and group profitability***." While the Offering Documents stated that integration efforts had occasionally experienced certain challenges, "[h]istorically, the Micro Focus Group believes that it has ***successfully worked through these integration challenges and has not seen a material impact on its ability to obtain the desired integration results or improvements in operations and profitability***."

37.     The Offering Documents touted the competitive and operational strengths of Micro Focus due to its strategic acquisitions, such as the Merger. For example, the Offering Documents stated that Micro Focus had "a clear strategy and business model" that was "focused on the way in which we believe that mature infrastructure software businesses should be managed and that the market for these businesses is going to consolidate." The Offering Documents stated that Micro Focus had positioned itself to be a leader in this consolidated space, as it had "set out to be an effective company at managing a portfolio of mature infrastructure software assets." The Offering Documents touted Micro Focus's "***proven ability to execute***," because it "not only delivers significant amounts of cash and consequently great flexibility, but also [delivers] a competitive advantage in the acquisition of other similar assets." The Offering Documents listed the aims 'of Micro Focus's operational strategy as achieving "***1. Revenue growth; 2. Operational leverage; and 3. Significant cash generation***." In addition, the Offering Documents stated that the Company's capital allocation, which included strategic acquisitions, allowed it to achieve its long term objective of "***15 to 20% per annum***" "Total Shareholder Returns" over the long run, and that acquisitions were "***only made***" "if the Micro Focus Board believes that they will generate risk adjusted returns greater than the base case." The Offering Documents continued in pertinent part:

Class Action Complaint for Violation of the Federal Securities Laws

The software products offered by Micro Focus enable organizations to achieve improved functionality and performance from their enterprise applications and middleware, whilst lowering their ongoing cost of IT operations. ***The Micro Focus Group allocates capital and HR to achieve its core objective of delivering Total Shareholder Returns of 15 to 20% per annum over the long term***. The Micro Focus Group executes this strategy with ***a strong discipline around the uses of cash and optimizes Total Shareholder Returns with*** a combination of organic execution, financial leverage and acquisitions. The Micro Focus Group has a base case model which estimates the returns to Micro Focus Shareholders from organic execution and the return of excess cash. ***Acquisitions are only made if the Micro Focus Board believes that they will generate risk adjusted returns greater than the base case.*** In the absence of material acquisitions, the Micro Focus Group's practice has been to return excess cash to Micro Focus Shareholders through an appropriate mechanism.

38.     The Offering Documents further conveyed Micro Focus's confidence in the expected synergies of the deal by stating that one of the Company's "key areas of operational focus to achieve [its] core objective" was "***financial discipline in mergers and acquisitions***," and that it had already demonstrated "***strong financial discipline around the uses of cash***," $2.5 billion of which was to be expended by the Company in the Merger. The Offering Documents stated that the Company sought to "acquire businesses in the mature infrastructure software space and ***improve the operational efficiency of those businesses*** by applying the Micro Focus business model." Specifically, the Offering Documents stated that acquisitions would increase Micro Focus's ability to "***help clients derive value from their existing and often highly complex IT investments***."

39.     In addition, the Offering Documents pointed to Micro Focus's substantial due diligence of the HPE Software business it was acquiring over the more-than-one—year period since announcing the acquisition. The Offering Documents stated that, as far back as June 2016, "the parties and their respective advisors engaged in mutual due diligence of Micro Focus' business and HPE Software, as applicable." In addition, "Micro Focus and HPE and their respective legal advisors also negotiated the terms of various financing arrangements for the transaction with various financial institutions during this period." As part of this process, the Offering Documents stated that the HPE Board had concluded that "a combination of HPE Software with Micro Focus would help address [HPE Software's] challenges by ***creating a more focused, nimble and scalable software business, particularly given Micro Focus's historical experience with and focus on***

*effectively managing portfolios of mature infrastructure software products*." The Offering Documents also stated that the HPE Board had considered "*the potential value to HPE Stockholders of the Micro Focus ADSs* representing 50.1% of the Micro Focus Fully Diluted Shares that they will own immediately following the Merger, including value resulting from: (1) *the potential cost reductions attributable to efficiencies and synergies* to be realized by combining HPE Software with Micro Focus and (2) *the benefits of separating HPE Software from HPE's other businesses*."

40.    The Offering Documents provided historical financial results for Micro Focus and HPE Software. For Micro Focus, the Offering Documents provided, *inter alia*, the following financial information, which represented that Micro Focus had grown revenues for the past three fiscal years and achieved revenues of $1.38 billion for the fiscal year ended April 30, 2017:

| (in thousands) | | As of and for the Year Ended April 30, | | | | |
|---|---|---|---|---|---|---|
| | | 2015 | | 2016 | | 2017 |
| **Statement of Comprehensive Income Data:** | | | | | | |
| Revenue | $ | 834,539 | $ | 1,245,049 | $ | 1,380,702 |
| Costs and expenses: | | | | | | |
| Cost of sales | $ | 140,547 | $ | 230,174 | $ | 237,169 |
| Selling and distribution costs | | 290,475 | | 416,333 | | 467,084 |
| Research and development expenses | | 113,292 | | 164,646 | | 180,104 |
| Administrative expenses | | 142,989 | | 138,962 | | 202,902 |
| | | 687,303 | | 950,115 | | 1,087,259 |
| Operating profit | | 147,236 | | 294,934 | | 293,443 |
| Other income (expense): | | | | | | |
| Share of results of associates | | (788) | | (2,190) | | (1,254) |
| Net finance costs | | (55,021) | | (97,348) | | (95,845) |
| Profit before tax | | 91,427 | | 195,396 | | 196,344 |
| Income tax benefit (expense), net | | 10,024 | | (32,424) | | (38,541) |
| Net income | $ | 101,451 | $ | 162,972 | $ | 157,803 |
| **Statement of Financial Position Data:** | | | | | | |
| Total current assets | $ | 460,967 | $ | 954,361 | $ | 442,193 |
| Total noncurrent assets | $ | 3,879,634 | $ | 3,681,332 | $ | 4,203,764 |
| Total assets | $ | 4,340,601 | $ | 4,635,693 | $ | 4,645,957 |
| Total current liabilities | $ | 988,030 | $ | 1,061,797 | $ | 944,697 |
| Total noncurrent liabilities | $ | 2,074,510 | $ | 1,980,168 | $ | 2,087,770 |
| Total liabilities | $ | 3,062,540 | $ | 3,041,965 | $ | 3,032,467 |
| Total equity | $ | 1,278,061 | $ | 1,593,728 | $ | 1,613,490 |
| Total liabilities and equity | $ | 4,340,601 | $ | 4,635,693 | $ | 4,645,957 |

41.    The Offering Documents provided additional information about Micro Focus's purportedly increasing revenues, and the historical breakdown between its operating segments. For

- 12 -

example, the Offering Documents stated that *"[r]evenues grew by $135.7 million, or 10.9%,* ($12.0 million decrease, or 0.9% on a pro-forma constant currency basis) to $ 1,380.7 million in the fiscal year ended April 30, 2017 as compared to $1,245.0 million in the fiscal year ended April 30, 2016."* The Offering Documents also provided the following table of the Company's financial results by operating segment:

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| Licence | **308.4** | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | **720.7** | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | — | — | — | — | — | — | — |
| Consultancy | **48.2** | 41.9 | 6.3 | 15.0% | 54.8 | (6.6) | (12.0%) |
| **Total** | **1,077.3** | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| Licence | — | — | — | — | — | — | — |
| Maintenance | — | — | — | — | — | — | — |
| Subscription | **298.7** | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | **4.7** | 4.9 | (0.2) | (4.1%) | 4.9 | (0.2) | (4.1%) |
| **Total** | **303.4** | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |
| Licence | **308.4** | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | **720.7** | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | **298.7** | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | **52.9** | 46.8 | 6.1 | 13.0% | 59.7 | (6.8) | (11.4%) |
| **Total Revenue** | **1,380.7** | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

42.     Further, the Offering Documents showed increasing revenues in the Company's North America sales region, with annual revenues increasing by over 12.5% (or declining by only 3.1% on a constant currency basis) between April 30, 2016 and April 30, 2017. In addition, the Offering Documents stated that "[w]hile the Micro Focus Product Portfolio did decline 5.7% on a

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| North America | **591.4** | 525.2 | 66.2 | 12.6% | 627.1 | (35.7) | (5.7%) |
| International | **389.7** | 377.0 | 12.7 | 3.4% | 415.0 | (25.3) | (6.1%) |
| Asia Pacific & Japan | **96.2** | 89.0 | 7.2 | 8.1% | 100.2 | (4.0) | (4.0%) |
| **Total** | **1,077.3** | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| North America | **121.8** | 108.6 | 13.2 | 12.2% | 108.7 | 13.1 | 12.1% |
| International | **142.8** | 115.6 | 27.2 | 23.5% | 111.6 | 31.2 | 28.0% |
| Asia Pacific & Japan | **38.8** | 29.6 | 9.2 | 31.1% | 30.1 | 8.7 | 28.9% |
| **Total** | **303.4** | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |
| North America | **713.2** | 633.8 | 79.4 | 12.5% | 735.8 | (22.6) | (3.1%) |
| International | **532.5** | 492.6 | 39.9 | 8.1% | 526.6 | 5.9 | 1.1% |
| Asia Pacific & Japan | **135.0** | 118.6 | 16.4 | 13.8% | 130.3 | 4.7 | 3.6% |
| **Total revenue** | **1,380.7** | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

pro forma constant currency basis in the fiscal year ended April 30, 2017 as compared to the fiscal year ended April 30, 2016, *it delivered performance in line with management expectations*." The Offering Documents also stated that the Company's *"[u]uderlying Adjusted EBITDA increased by $108.4 million, or 20.4%,* to $640.9 million in the fiscal year ended April 30, 2017 as compared to $532.5 million in the fiscal year ended April 30, 2016." The Offering Documents provided the following table of regional financial results:

Class Action Complaint for Violation of the Federal Securities Laws

43.    The Offering Documents included the historical financial results for Seattle SpinCo, Inc. ("Seattle"), the subsidiary of HPE that held the HPE Software business assets to be acquired in the Merger. The Offering Documents provided the following table of Seattle's historical financial results:

| (in millions) | As of and for the Fiscal Years Ended October 31 | | | | | As of and for the Six Months Ended April 30 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 2014 | | 2015 | | 2016 | | 2016 | | 2017 |
| **Combined Statements of Operations** | | | | | | | | | |
| Net revenue | $ | 3,933 | $ | 3,622 | $ | 3,195 | $ | 1,554 | $ | 1,406 |
| Earnings (loss) from operations | | 415 | | 321 | | 238 | | 109 | | (48) |
| Net earnings (loss) | | 361 | | 391 | | 80 | | 124 | | (39) |
| **Combined Balance Sheets** | | | | | | | | | |
| Total assets | $ | 11,634 | $ | 10,979 | $ | 10,647 | | | $ | 10,460 |
| Total capital lease obligations | | 21 | | 32 | | 36 | | | | 39 |
| **Combined Statements of Cash Flows** | | | | | | | | | |
| Net cash provided by operating activities | $ | 708 | $ | 235 | $ | 123 | $ | 253 | $ | 176 |
| Net cash (used in) provided by investing activities | | (16) | | 40 | | 211 | | 222 | | (17) |
| Net cash used in financing activities | | (813) | | (322) | | (354) | | (455) | | (122) |

44.    In additional, the Offering Documents provided the combined historical information of Micro Focus and Seattle. The Offering Documents stated that the Company had achieved *$4.434 billion* in combined revenues for the twelve months ended April 30, 2017, as provided in the following table:

Class Action Complaint for Violation of the Federal Securities Laws

| (In millions of U.S. dollars, except for per share data) | Historical Micro Focus for the year ended April 30, 2017 | Adjusted Seattle for the twelve months ended April 30, 2017 (Note 2) | Pro forma merger adjustments (Note 3) | Note 3 references | Total pro forma combined |
|---|---|---|---|---|---|
| Revenue | $ 1,381 | $ 3,053 | $ — | | $ 4,434 |
| Cost of sales comprising: | | | | | |
| Cost of sales (excluding amortization of capitalized development costs and acquired technology intangibles) | (146) | (823) | — | | (969) |
| Amortization of product development costs | (22) | — | — | | (22) |
| Amortization of acquired technology intangibles | (69) | (97) | (62) | (c)(iv) | (228) |
| Cost of sales | (237) | (920) | (62) | | (1,219) |
| **Gross profit** | $ 1,144 | $ 2,133 | $ (62) | | $ 3,215 |
| | | | | | |
| Selling and distribution costs | (467) | (994) | (437) | (c)(iv) | (1,898) |
| Research and development expenses comprising: | | | | | |
| Expenditure incurred in the year | (208) | (526) | — | | (734) |
| Capitalization of product development costs | 28 | — | — | | 28 |
| Research and development expenses | (180) | (526) | — | | (706) |
| Administrative expenses | (203) | (546) | 321 | (a) | (428) |
| **Operating profit** | $ 294 | $ 67 | $ (178) | | $ 183 |
| | | | | | |
| Share of results of associates and gain on dilution of investment | (1) | — | — | | (1) |
| Finance costs | (97) | (72) | (148) | (b) | (317) |
| Finance income | 1 | 13 | — | | 14 |
| **Profit (loss) before tax** | 197 | 8 | (326) | | (121) |
| Taxation | (39) | (123) | 108 | (g) | (54) |
| **Profit (loss) for the period** | $ 158 | $ (115) | $ (218) | | $ (175) |
| **Attributable to:** | | | | | |
| Equity shareholders of the parent | 158 | (115) | (218) | | (175) |
| Noncontrolling interests | — | — | — | | — |
| **Profit (loss) for the period** | $ 158 | $ (115) | $ (218) | | $ (175) |
| | | | | | |
| Earnings (loss) per share attributable to equity shareholders of the parent (Note 4): | | | | | |
| Basic | $ 0.69 | | | | $ (0.40) |
| Diluted | $ 0.67 | | | | $ (0.40) |
| | | | | | |
| Weighted average shares outstanding (Note 4): | | | | | |
| (in millions) | | | | | |
| Basic | 229 | | 206 | | 435 |
| Diluted | 237 | | 198 | | 435 |

45.     The Offering Documents highlighted the importance to Micro Focus's business of maintaining "high customer satisfaction levels in order to retain and grow its customer base." The Offering Documents touted the fact that Micro Focus had "***over 20,000 customers, including 91 of the Fortune 100 companies***," and that HPE Software had "***over 30,000 customers worldwide, including 98 of the Fortune 100 companies***." While the Offering Documents acknowledged the

material importance of retaining customers and the risks that "*may*" occur to the Company's business "if" it failed to retain and grow its customer base, it failed to disclose the significant disruption to customer accounts and loss of customers that had already occurred as a result of HPE Software's separation from HPE and HP. The Offering Documents continued in pertinent part:

> The Group's ability to maintain customer satisfaction depends in part on the quality of its professional service organization and technical and other support services, including the quality of the support provided on its behalf by certain partners. Once products are deployed within the IT environments of the Group's customers, these customers depend on the Group's ongoing technical and other support services, as well as the support of the Group's channel partners, to resolve any issues relating to the implementation and maintenance of the Group's products. *If the Group or its channel partners do not effectively assist its customers in deploying its products, succeed in helping its customers quickly resolve post-deployment issues, or provide effective ongoing support, the Group may be unable to sell additional products to existing customers and its reputation with potential customers could be damaged As a result, the failure by the Group to maintain high-quality customer support could have a material adverse effect on the business, financial condition, results of operation and prospects of the Group.*

46.     In addition, the Offering Documents highlighted the importance of employee retention and, in particular, of its sales force, on the Company's continued success. For example, the Offering Documents stated that "*Micro Focus believes the Group's success is dependent upon its ability to attract and retain senior management as well as other key employees, such as sales management*, product management and development personnel that provide expertise and experience critical to the implementation of the Group's strategy." The Offering Documents also stated that the Company is "*dependent on the success of its sales force*, and its failure to develop the skill sets of its sales personnel may lead to poor sales performance." The Offering Documents stated that Micro Focus had "*more than 4,800 employees in over 90 global locations*." Similarly, the Offering Documents stated that HPE Software had "*approximately 16,900 employees as of October 31, 2016*," including certain employees from HPE's global marketing team and central corporate function. While the Offering Documents acknowledged the material importance of

keeping sales employees and the risks that "may" occur to the Company's business "if" it failed to retain key personnel and sales employees, it failed to disclose that a greater number of sales employees had already been laid off, quit or switched roles than had been disclosed and that the diminished sales capabilities as a result of these changes was already hurting sales and revenues.

47.     The statements contained in   ¶¶32-46 were materially false and misleading when made because they failed to disclose that: (1) HPE Software was experiencing significant disruptions in global customer accounts as a result of its de-merger from HP, which had materially impacted HPE Software's ability to retain customers and for Micro Focus to recognize claimed synergies from the Merger; (2) HPE Software and Micro Focus were experiencing massive employee attrition, including the loss of key sales personnel, and that this loss had adversely impacted the Company's operational capabilities and revenue trends; (3) Micro Focus was suffering worsening revenue trends and was on pace to significantly miss market expectations for its interim results in its core legacy business for the six months ended October 31, 2017 – with revenues for the Company's Existing Products portfolio ultimately declining 7% during the period and its licensing revenues in this segment declining 17% during this time – and that these worsening revenue trends were accelerating; (4) Micro Focus was experiencing significant sales execution problems in its North America region; (5) HPE Software did not have the operational capabilities, loyal customer base, products or key personnel to justify its purchase price or to reverse worsening revenue trends; (6) Micro Focus had failed to put in place the operations, procedures and personnel necessary to integrate successfully with HPE Software, or conduct sufficient due diligence, so as to provide a reasonable likelihood that the purported synergies from the Merger would be realized;  (7) the total enterprise value for the Merger was artificially inflated by more than $3.4 billion; and (8) as a result of (1)-(7), the Company's ability to service the increased debt load it had incurred as a result of the Merger had been materially impaired.

48.     Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 (a)(3)(ii), requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations." Similarly, Item 503 of SEC Regulation S-K, l7

C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe[] the risk." 'The failure of the Registration Statement to disclose the facts listed in 1145 violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R. §229.503 because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in Micro Focus ADSs speculative or risky.

49.     The Merger was completed on September 1, 2017. As a result of the Merger, Micro Focus issued ADSs representing more than 222 million consideration shares to HPE shareholders. On the first trading day, the ADSs issued in the Merger closed at $28.81 per ADS, representing over $6.4 billion in total market value.

50.     On September 6, 2017, Micro Focus filed its third quarter financial results and an update for the period ending October 31, 2017 for HPE Software on Form 6-K. The Form 6-K stated that HPE Software generated revenues of $718 million for the quarter ended July 31, 2017, which represented a 3% revenue decline compared to the same period in 2016. The Form 6-K also provided guidance for HPE Software for the year ended October 31, 2017 in the range of $2.89 billion to $2.96 billion "driven by the active reduction of less profitable professional services in sub-scale service lines and geographies together with lower license revenue offset by increasing SaaS revenue and support revenue being broadly flat." This guidance range implied fourth quarter 2017 revenues down 13% at the midpoint.

51.     On January 8, 2018, Micro Focus provided its financial and operating results for the six months ended October 31, 2017 on Form 6-K (the "January Interim Update"). The Company reported revenue of only $1.235 billion for the period and an adjusted EBITDA of only $530 million. The HPE Software revenue for the year ended October 31, 2017 came in at the very bottom of the prior reported guidance at $2.891 billion, and $34 million below the mid-point. In addition, the Company stated that it had suffered sales execution issues in its North America region stemming from the loss of key sales personnel. Micro Focus's legacy businesses revenue came in 2.7% lower

Class Action Complaint for Violation of the Federal Securities Laws

and Adjusted EBITDA came in 4.1% lower for the period as Micro Focus stated it had "put operational improvement plans on hold while working on the completion of the HPE Software transaction." In addition, Micro Focus reported revenues of only $500.3 million for the six months ended October 31, 2017 in its Existing Products segment, reflecting a 7% year-over-year decline. The Company's licensing services in its Existing Products segment declined 17% and its consultancy services in the segment declined 11.7% during this same time. The Company also revealed that defendant Phillips would change positions from CFO to the Company's Director of M&A.

52.     Then, on March 19, 2018, Micro Focus filed a trading update and management change on a Form 6-K filed with the SEC. The Form 6-K stated that the Company's revenue declines had significantly accelerated. Specifically, Micro Focus lowered its constant currency revenue guidance for the twelve months ended October 31, 2018 to minus 6% to minus 9% compared to the prior year. This more than doubled the rate of revenue decline provided in the January Interim Update. The trading update also stated that the worsening revenue trends stemmed from disruption of former HP global customer accounts as a result of the de-merger of HP and HPE – an event that occurred in November 2015 – and that the Company had suffered ongoing sales execution issues, particularly in North America, as well as significant employee attrition. In addition, the trading update revealed that defendant Hsu had abruptly resigned from the Company, despite taking the helm as CEO only six-and-a-half months previously and overseeing the Merger.

53.     On March 22, 2018, the price of Micro Focus ADS closed at $12.99 per ADS, representing a decline of more than 54% from the closing price of the ADS on the date of the Merger's close.[4]

### CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased or acquired Micro Focus ADSs pursuant or traceable to the Company's Registration Statement and Prospectus (Registration No. 333-219678) issued in connection with the Merger (the "Class").

---

[4] The amount is unadjusted for dividends.

Class Action Complaint for Violation of the Federal Securities Laws

Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Micro Focus ADSs are actively traded on the NYSE under the ticker symbol "MFGP" and millions of shares were sold in the Merger. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Micro Focus of its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58.      Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.   whether Defendants violation the Securities Act;

b.   whether statements made by Defendants to the investing public in the Offering Documents misrepresented material facts about the business and operations of Micro Focus and the Merger; and

c.   to what extent the members of the Class have sustained damages and the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

#### Violations of Section 11 of the Securities Act
#### Against All Defendants

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is not based on and does not sound in fraud.

61.     This claim is brought by Plaintiff and on behalf of other members of the Class who purchased or otherwise acquired Micro Focus ADSs pursuant to or traceable to the Company's Offering Documents. Each member of the Class acquired his, her, or its shares pursuant to and/or traceable to, and in reliance on, the Offering Documents. Micro Focus is the issuer of the ADSs through the Offering Documents, on which the Individual Defendants were signatories.

62.      Defendants issued and disseminated, and caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements and/or omissions to the investing public that were contained in the Offering Documents, which misrepresented or failed to disclose, among other things, the facts as set forth above. By reason of the conduct alleged herein, each Defendants violated and/or controlled a person who violated Section 11 of the Securities Act, 15 U.S.C. §77k.

63.     Micro Focus is the issuer of the ADSs sold via the Offering Documents. As issuer of these ADSs, the Company is strictly liable to Plaintiff and the Class members for the material misstatements and omissions contained therein.

64.     At the times they obtained their shares of the Company, Plaintiff and the members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

65.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering Documents that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering Documents. It is therefore timely.

66. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Micro Focus ADSs was substantially lower than the prices paid by Plaintiff and the other members of the Class.

67. By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

68. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein. This claim is not based on and does not sound in fraud.

69. Plaintiff purchased Micro Focus ADSs pursuant to the Offering Documents.

70. Defendants were sellers, offerors and/or solicitors of sales of the ADSs offered pursuant to the Registration Statement. The Registration Statement contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

71. Plaintiff and the other Class members who purchased or otherwise acquired shares pursuant to the materially untrue and misleading Prospectus did not know or, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

72. Defendants owed to Plaintiff and the other Class members who purchased or otherwise acquired shares pursuant to the materially false and misleading Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading. Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Prospectus were true and without omissions of any material facts and were not misleading. By virtue of the conduct alleged herein, Defendants violated § 12(a)(2) of the Securities Act.

Class Action Complaint for Violation of the Federal Securities Laws

73.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired Micro Focus ADSs.

## COUNT II

### Violations of Section 15 of the Securities Act Against the Individual Defendants

74.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  This claim is not based on and does not sound in fraud.

75.      This claim is asserted against the Individual Defendants, each of whom was a control person of Micro Focus at relevant times.

76.     The Individual Defendants were control persons of Micro Focus by virtue of, among other things, their positions as senior officers and directors of the Company, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement and Prospectus. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/ or major shareholders of Micro Focus and/or HPE Software. The Company controlled the Individual Defendants and all of its employees.

77.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

78.     Defendants were culpable participants in the violations of §§ 11 and 12(a)(2) of the Securities Act alleged in the Causes of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the issuance of Micro Focus ADSs in the Merger to be successfully completed.

79.

80.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after Micro Focus ADSs was sold to the Class in connection with the Offering Documents.

81.     By reason of the misconduct alleged herein, for which Micro Focus is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as Micro Focus pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

B.     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

C.     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 23, 2018                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws