**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___9/29/2020____

**IN RE MICRO FOCUS INTERNATIONAL PLC SECURITIES LITIGATION**

**1:18-cv-06763-ALC**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

Iron Workers' Local No. 25 Pension Fund brings this action against Defendant Micro Focus International ("Micro Focus"), and certain individuals including Micro Focus board members and executives[1], for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), United States Securities and Exchange Commission ("SEC") Rule 10b-5 thereunder and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") in connection with a 2017 merger with HPE Software ("the Merger"). It does so on behalf of itself and all other person or entities that purchased or otherwise acquired American Depositary Shares ("ADSs") of Micro Focus during the period from September 1, 2017 through August 28, 2019, or pursuant or traceable to Micro Focus's issuance of approximately 222 million

---

[1] Individual defendants can be placed in two groups. The Executive Defendants (and their positions during the relevant period): Christopher Hsu, CEO and a director of Micro Focus; Stephen Murdoch, CEO and a director of Micro Focus; Mike Phillips, CFO and a director of Micro Focus, Director of Mergers & Acquisition; Kevin Loosemore, Executive Chairman of Micro Focus; and Nils Brauckmann, CEO of Micro Focus's open-source product portfolio and director of Micro Focus. Director Defendants: Karen Slatford, Richard Atkins, Amanda Brown, Silke Scheiber, Darren Roos, Giselle Manon, and John Schultz.

Micro Focus ADSs on or around September 1, 2017 pursuant to the Offering Documents[2], and who were damaged by such purchase or acquisition. Defendants move to dismiss Plaintiff's Second Amended Complaint ("SAC").

After careful review of Plaintiff's SAC, the Court concludes that Plaintiff's claims must be dismissed. Neither immaterial false statements nor material true statements are actionable. *See Basic Inc. v. Levinson,* 485 U.S. 224, 238 (1988). Plaintiff has failed to plead actionable misstatements for his Section 10-b claim because Plaintiff has not pleaded facts to demonstrate falsity with specificity and repeatedly alleges misstatement that are puffery that no reasonable person would find material. For some alleged misstatements, the failure to plead falsity arises from the fact that statements from Former Employees, on which Plaintiff relies to plead the existence of undisclosed disfunction at Micro Focus, are not specific enough to indicate that a statement about the Merger was false when made. Because the Court concludes that Plaintiff's Section 11 and 12(a)(c) claims sound in fraud, they are subject to the same heightened pleading standard as the Section 10-b claim. Plaintiff's Section 11 or 12(a)(c) claims, which are based on the same alleged misstatements and omissions as the Section 10-b claim, must therefore be dismissed for the same failure to plead actionable misstatements and omissions. Finally, Plaintiff's control person claims pursuant to Section 20(a) and Section 15(a) also fail because Plaintiff has pleaded no primary

---

[2] As pleaded by Plaintiff, the "Offering Documents" include a Form F-4, a Form F-6, and a Form 10 which all provided information to ADS acquirers. On August 4, 2017, Micro Focus registered the underlying Micro Focus shares on a Form F-4, which stated that "[t]he securities being offered hereby will be issued in the form of American Depositary Shares of the registrant" with "[e]ach Micro Focus ADS [to] represent one Micro Focus Share[.]" The Form F-4 was amended on August 15, 2017 and declared effective that same day (the "Registration Statement"). The Registration Statement was signed by Defendants Loosemore, Phillips, Murdoch, Brauckmann, Slatford, Atkins, Brown, Scheiber, Manon, and Roos. On August 22, 2017, Micro Focus filed a prospectus for the ADSs to be issued in the Merger on Form 424B3, which formed a part of the Registration Statement (the "Prospectus"). The Prospectus was also incorporated by reference and attached as an exhibit to the Form F-4. SAC ¶ 198.

violation by the controlled person, Micro Focus. In light of these conclusions, the Court need not reach the other arguments advanced by the Parties. Defendants' motion to dismiss is GRANTED.

## BACKGROUND

On September 7, 2016, Micro Focus announced that it would purchase HPE Software, which would be spun out from HPE and merged into Micro Focus. SAC ¶ 4. Micro Focus is a U.K. infrastructure software company that develops, sells, and supports software products and solutions to businesses and various governmental entities. SAC ¶34. HPE Software was an operating unit of HPE, an enterprise and software business that had been part of the Hewlett-Packard Company until 2015. SAC ¶ 57.

Beginning with that announcement, up to the September 1, 2017 completion of the Merger, through the end of the class period, Plaintiff alleges problems dogged Micro Focus. Plaintiff pleads that as soon as the Merger was announced, HPE Software customers declined to renew their contracts because of Micro Focus's "reputation for auditing licenses and increasing maintenance prices, without investing in software to update it, add features, or adapt to changing customer needs or advances ", SAC ¶ 85; certain HPE Software sales, which had historically been bundled with HPE hardware, declined, SAC ¶ 90; and HPE Software and Micro Focus began experiencing "massive sales-personnel attrition", SAC ¶¶ 91, 92. Plaintiff alleges these problems continued through the completion of the Merger, SAC ¶ 94, at which time new problems also arose. The rollout of a new internal computer system called "FAST" (Future Architecture for Software Transformation) was plagued with issues, including that it prevented sales personnel from providing quotes, processing purchase orders, or generating invoices. SAC ¶ 11. Plaintiff further alleges that after the Merger, Micro Focus failed to rationalize existing HPE Software and Micro Focus products, and these products cannibalized each other. SAC ¶ 107. Plaintiff's allegations rely heavily on the statements of Former

Employees that worked for Micro Focus or HPE Software before the Merger and stayed on for some period at post-Merger Micro Focus. ECF No. 88-1.

Despite the problems that emerged, Plaintiff alleges that Defendants made repeated statements about how the Merger would increase Micro Focus's profits and result in superior shareholder returns. SAC ¶ 3. Plaintiff alleges false and misleading statement spanning from September 7, 2016 to July 9, 2019. Notably, Plaintiff alleges that the Offering Documents included false and misleading statements in the form of risk warnings stating that customer and salesperson attrition, *inter alia*, might derail the Merger when in fact these risks had already materialized. SAC ¶ 213. Plaintiff also makes the related claim that Micro Focus had a duty to disclose trends in customer and salesperson attrition in their Offering Documents, including the Registration Statement. SAC ¶ 385.

Micro Focus eventually disclosed the problems arising from the Merger over the course of various corrective disclosures on January 8, 2018, March 19, 2018, July 11, 2018, July 9, 2019 and August 29, 2019. SAC ¶¶ 15-29. On each of these days there were drops in the value of Micro Focus ADS. SAC ¶¶ 16, 19, 22, 26, 28. However, Plaintiff alleges these were only partial corrective disclosures, in light of the continued false and misleading assurances from Micro Focus to the public about the positive progress of the Merger. *See* SAC ¶¶ 340-364.

On May 23, 2018, Plaintiff filed the Complaint initiating this matter, which was amended on November 9, 2018. ECF Nos. 1, 65. On January 22, 2019, Defendants moved to dismiss the Amended Complaint. ECF Nos. 70-76. Defendants' motion was mooted by Plaintiff's filing a Second Amended Complaint ("SAC") on September 30, 2019. ECF Nos. 87, 88. On November 4, 2019, Defendants moved to dismiss the Second Amended Complaint. ECF Nos. 91-98. Plaintiff

opposed this motion on December 19, 2019, ECF No. 99. Defendants replied on January 17, 2020. ECF Nos. 100-103.

### STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 570. On a motion to dismiss, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). But to satisfy Rule 12(b)(6), a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 555) .

A complaint alleging securities fraud must also satisfy the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud. *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1), (2). Rule 9(b) likewise requires that the plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

"[T]he heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Id.* at 171. As the Second Circuit has explained, "[b]y its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* "The same course of conduct that would support a Rule 10b–5 claim may as well support a Section 11 claim or a claim under Section 12(a)(2). So while a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.*

## DISCUSSION

Plaintiff's overarching narrative is that following the September 7, 2016 announcement of the Merger, Micro Focus and HPE Software were beset by serious problems. As told by Former Employees, attrition in both customers and salespersons and decreased sales because of product overlap between Micro Focus and HPE Software began once the Merger was announced. Following the completion of the Merger, problems with the implementation of a new internal computer system, called FAST, emerged too. Despite these problems, Micro Focus made statements touting the Merger, which Plaintiff alleges were false and misleading because the Merger was dead on arrival.

Defendants argue that the SAC should be dismissed because Plaintiff fails to state a Section 10(b) claim by failing to adequately plead any material false and misleading statement or

omissions; failing to allege facts that give rise to a strong inference of scienter by defendants, and failing to plead loss causation. As to the Section 11 and 12(a)(2) claims, Defendants argue that these fail because Plaintiff has not pleaded any materially false and misleading statement or omission, fails to meet the applicable fraud pleading standard, and failed to plead standing to assert these claims. Because the Section 10-b and Section 11 and 12(a)(2) claims cannot succeed, Defendants argue that the control person liability claims predicated on each fails too.

Plaintiff counters that it has adequately pleaded actionable misrepresentations and omissions by Micro Focus as well as facts that give rise to a strong inference of scienter. Plaintiff further counters that it has standing to assert the Section 11 and 12(a)(2) claims, which do not sound in fraud and are therefore not subject to a heightened pleading standard. Finally, Plaintiff counters that they have adequately pleaded predicate violations, so their control person claims should not be dismissed.

For the reasons that follow, the Court concludes that Plaintiff has failed to plead predicate violations of the Exchange and Securities Acts, and all claims must therefore be dismissed.

A. Plaintiff's Rule 10-b5, Section 10-b and Section 20 Exchange Act Claims

"To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) (*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005)). "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the

defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Id.* at 108.

A violation of Section 10(b) and Rule 10b–5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made. See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 812-13 (2d Cir.1996) ("Plaintiffs allege no circumstances to support their allegation that the allegedly false statements, made at least three weeks before the 8.3 percent figure was announced, were false at the time made."). A statement believed to be true when made, but later shown to be false, is insufficient. *Id.* (explaining that "plaintiffs have not alleged circumstances to show that the defendants lacked a reasonable basis for their optimistic, but qualified predictions as to the company's future performance"); *see Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000) ("refus[ing] to allow plaintiffs to proceed with allegations of 'fraud by hindsight.' Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.").

Moreover, the Second Circuit has repeatedly stated that plaintiffs must do more than simply assert that a statement is false— "they must demonstrate with specificity why that is so." *Rombach,* 355 F.3d at 174; *see also Kleinman v. Elan Corp., plc,* 706 F.3d 145, 152-53 (2d Cir. 2013). Where a plaintiff asserts the falsity of a statement of belief or opinion, the plaintiff must plead that it "was both objectively false and disbelieved by the defendant at the time it was expressed." *Fait v. Regions Fin. Corp.,* 655 F.3d 105, 110 (2d Cir. 2011); *see City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.,* 679 F.3d 64, 67-68 (2d Cir. 2012) (stating that *Fait's* "reasoning applies under Sections 10(b) and 20(a) of the 1934 Act"). "Statements regarding projections of future performance may be actionable under Section 10(b) or Rule 10b–5 if they are worded as guarantees

or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them. *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (citations omitted).

Additionally, to be actionable under Section 10(b) and Rule 10b–5, the alleged misstatement or omission must be material. *Basic,* 485 U.S. at 238. That is, there must be a substantial likelihood that a reasonable person would consider the fact misstated or omitted important in connection with a contemplated securities transaction. *See Id.; Azrielli v. Cohen Law Offices,* 21 F.3d 512, 518 (2d Cir.1994).

"[R]osy predictions," or statements that are loosely optimistic regarding a company's well-being, have been found to be too vague and general to be actionable. *See, e.g. Rombach,* 355 F.3d at 174 ("[E]xpressions of puffery and corporate optimism do not give rise to securities violations."). Such statements, or "puffery," are not actionable because they are "too general to cause a reasonable investor to rely upon them." *See, e.g., ECA,* 553 F.3d at 206 (general statements regarding a reputation for integrity and highly disciplined risk-management processes constituted non-actionable puffery); *Lasker v. New York State Elec. & Gas Corp.,* 85 F.3d 55, 59 (2d Cir.1996) (holding statements that company would not "compromise its financial integrity," touting its "commitment to create earnings opportunities," and that these "business strategies [would] lead to continued prosperity," "consist of precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable."). "This is particularly true where . . . the statements are explicitly aspirational, with qualifiers such as 'aims to,' 'wants to,' and 'should.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). A "claim that [] statements were knowingly and verifiably false when made does not cure their generality, which

is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *Id.*

The Court turns to Plaintiff's specific alleged misstatements and omissions. The analysis that follows will deal with each day on which an alleged misstatement was made but does not endeavor to discuss each and every alleged statement on a given day. While the below analysis is lengthy because of the number of misstatements and misstatement days alleged, the upshot is quite simple. Plaintiff's Section 10-b claim must be dismissed for repeated failure to plead falsity with particularity and materiality, and thereby plead actionable misstatements and omissions.

a. Pre-Merger Alleged Misstatements: September 7, 2016

The first alleged misstatements by Micro Focus are on September 7, 2016 in a press release, SEC filing, and presentation. On that day, Micro Focus made statements about the benefits of the Merger. This includes, for example, statements that the Merger had the "potential to deliver shareholder returns superior to those likely to be achieved on an organic basis" and the "scope to improve HPE Software's profitability through the application of our disciplined operating model". SAC ¶ 69. These are optimistic projections that discuss hoped-for outcomes of the Merger. Plaintiff has not pleaded facts showing that the speakers did not genuinely or reasonably believe these statements. Further, these are expressions of corporate optimism that are too vague and general to be actionable. Because Plaintiff fails to plead falsity or materiality, Plaintiff fails to plead an actionable misstatement on September 7, 2016.

b. Pre-Merger Alleged Misstatements: September 8, 2016

The Court also concludes that the alleged misstatements from a September 8, 2016 M&A Call are inactionable. On that call, Micro Focus, through Defendant Loosemoore, made various

forward-looking statements regarding the Merger. Loosemoore made statements that the Merger was "a huge opportunity for efficiency improvement"; presented a "mix of opportunities to consolidate, to create scale in key segments that we operate in on products which are often adjacent to what we currently do"; and was "a ***significant operational efficiency*** opportunity in terms of how we can improve the margins of the businesses" SAC ¶¶ 71, 191, 192. Loosemore also stated: "We have a track record of driving efficiencies. There is nothing we need to do which is different than what we've done in any of our previous acquisitions, it's just big and larger scale, but as we've discussed with many of you, we've been building the management team over the prior year to actually accommodate that." SAC ¶ 192. He also referred to FAST: "So the opportunity we have is to actually piggyback on the back of [an HP system update]. So we will be amending our plan to be a plan to how we will then roll our systems onto their system completion. So it actually provided us with effectively another opportunity to save money." SAC ¶ 194.

These are statements of optimism that no reasonable investor would find material. To the degree these statements contain statements of present fact, Plaintiff has failed to plead falsity. For example, Plaintiff pleads no facts showing Micro Focus did not plan to integrate their system with HPE Software's system or had not been building its management team to steer the Merger. Plaintiff has also failed to plead facts showing these statements of opinion about the Merger were disbelieved when made. The September 8, 2016 alleged misstatements are therefore not actionable.

c.  Pre-Merger Alleged Misstatements: July 12, 2017

Next, Plaintiff alleges misstatements on July 12, 2017 during an analyst and investor conference call to discuss its preliminary financial results for the fiscal quarter and year ended April 30, 2017. Plaintiff alleges it was a misstatement when Defendant Murdoch said Micro Focus was managing the integration process with "2 very significant teams; 1 on the HPE [Software]

side, 1 on our side, all managed under a common governance structure,  tracking more than 10,000 very specific tasks through to completion". SAC at 196. Plaintiff does not plead any facts showing that this statement was false when made. This is therefore not an actionable misstatement.

Plaintiff further alleges that Defendant Loosemore made a misstatement by saying that the new business would be "'fully integrate[d]' by November 1, 2017." SAC ¶ 196. In its full context, Loosemore's statement was: "So we'll close 1st of September, run them independently to 31st of October, fully integrate the businesses on the 1st of November. By the 2nd of November, HPE Software will not exist; the old Micro Focus will not exist," ECF No. 98-22 at 4. Properly contextualized, no reasonable investor would have interpreted this as a guarantee of operational integration by a date certain. Rather, November 1, 2017 is the date when the legacy corporate entities would cease to be. Plaintiff has not shown that this statement is false, nor that it is misleading when properly contextualized.

Finally, Micro Focus's statement that it "will do nothing that will constrain [its] ability to achieve organic growth and [it is] currently investing significant amounts on activities designed to enhance growth," SAC 196, is too vague to be material. Nor does Plaintiff plead any facts showing that the statement of current fact embedded therein—that Micro Focus was investing significant amounts on activities designed to enhance growth—was false.

The Court therefore concludes that Plaintiff has not pleaded actionable misstatements on July 12, 2017.

   d.   Alleged Misstatements in Offering Documents: August 2017

Next we turn to the Offering Documents filed in connection with the Merger. The majority of the alleged misstatements in the Offering Documents are forward looking statements. For

example, the Merger would "add a substantial recurring revenue base to Micro Focus' existing product portfolio, together with access to important new growth drivers and new revenue models." SAC ¶ 203. This and similar statements are inactionable because Plaintiff pleads no facts indicating the statements were not genuinely and reasonably believed when made. Nor does Plaintiff plead why these statements are misleading in the context of detailed statements of risk, including that "[t]he Group is dependent upon the effectiveness of its sales force and distribution channels to maintain and grow license, maintenance and consultancy sales"; that "[i]ntegration of HPE Software with the existing businesses carried on by the Micro Focus Group may be more time consuming and costly than anticipated"; and a list of key potential difficulties with effecting the integration. SAC ¶ 389.

Other statements in the Offering Documents are inactionable puffery. For example, Plaintiff alleges that Micro Focus's statement that the Merger is "***a rare opportunity to achieve a significant increase in Micro Focus' scale and breadth***, with the potential to ***deliver enhanced Total Shareholder Returns*** consistent with Micro Focus' stated objectives" was a misstatement. SAC ¶ 377. Plaintiff also plead that a statement that "[a]cquisitions are only made if the Micro Focus Board believes that they ***will generate risk adjusted returns greater than the base case***" is misleading. SAC ¶ 377. No reasonable investor would find these general statements material, nor has Plaintiff pleaded facts showing these statement were not believed when made.

A further complication is that Plaintiff also pleads that the very risk disclosures in the Offering Documents, specifically the Registration Statement, are in fact misstatements because they warned of risks that had already materialized. The Second Circuit has held that "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired". *Rombach,* 355 F.3d at 173. The question then is whether Plaintiff adequately pleaded

that on August 4, 2017, the date of the Registration Statement, those risks had transpired. The Court concludes Plaintiff has not done so.

*First*, Plaintiff pleads that a risk warning that the success of the Merger would depend on investment and development of products, without which customers "will seek alternative solutions, potentially resulting in the loss of new revenue opportunities and the cancellation of existing contracts", SAC ¶ 387, was false and misleading. This is allegedly misleading because "before the closing of the Merger, it was well known internally at both HPE Software and Micro Focus that numerous HPE Software customers were not and would not accept license renewals or sign new contracts following the announcement of the Merger in 2016, fearing that the software would not be kept up to date and be subject to innovation and development." SAC ¶ 214.

But the Former Employee testimony on which Plaintiff relies falls short of supporting Plaintiff's characterization that as of August 2017 "it was well known internally at both HPE Software and Micro Focus that numerous HPE Software customers were not and would not accept license renewals or sign new contracts". Plaintiff relies on statements from several Former Employees about their personal experiences at the company. One employee said that the announcement of the Merger "led to a decrease in consulting firms choosing or recommending HPE Software". SAC ¶ 86. This same employee said that "among the business partners that [employee] worked with, 'easily' 50% of the deals stopped and were either abandoned entirely or were paused and never got restarted". SAC ¶ 86. It was "harder" to get customers to renew agreements after the Merger. SAC ¶ 86. Another employee said post-Merger there was a reduction in Fortune 100 companies renewing their licenses. SAC ¶ 87.

Plaintiff also points to a few other signs of alleged customer attrition. *First*, Plaintiff directs the Court to the fact that a deal between HPE and Verizon was delayed because Verizon was in

litigation against Micro Focus. SAC ¶ 104. *Second*, Plaintiff alleges that after the Merger Micro Focus had to mend fences with Exxon Mobil, a client of HPE Software, because Micro Focus had audited Exxon Mobil after acquiring another company. SAC ¶ 104. *Third*, another former employee said that HPE created a "talk track" for employees whose customers asked questions about the Merger, SAC ¶ 88. This former employee also recalled that at quarterly meetings Defendant Hsu and another executive told salespeople to let them know if they had accounts that were at risk of leaving, so Hsu and the executive "could get out in front of it" and "walk them off the ledge." SAC ¶ 88.

These facts do support the undisputed proposition that there was customer attrition because of the Merger throughout the class period. But these facts do not adequately plead that there was well-known, wide-spread customer attrition at the relevant time, August 2017. The two facts that most clearly point to executive knowledge of a customer attrition problem, the "talk track" and the quarterly meeting statement, are consistent with unremarkable circumstances short of fraud. The Court therefore concludes that Plaintiff fails to adequately plead that such a customer attrition problem existed at scale by August 2017, and that it was widely known within the company at that time.

*Second*, Plaintiff alleges that risk statements about the sales force were false and misleading. Specifically, Micro Focus stated: "The Group is dependent upon the effectiveness of its sales force and distribution channels to maintain and grow license, maintenance and consultancy sales. . . . To the extent that the Group experiences significant turnover within its direct sales force or sales management, there is a risk that the productivity of the sales force would be negatively impacted which could lead to revenue declines. In addition, it can take time to implement new sales management plans and to effectively recruit and train new sales personnel,"

SAC ¶ 215. Plaintiff pleads that this was misleading because "the Merger was causing significant disruption of product flow as HPE Software was experiencing significant customer attrition and both Micro Focus and HPE Software were experiencing significant attrition of necessary sales personnel." SAC ¶ 216.

As previously discussed, Plaintiff has not pleaded facts showing that in August 2017 the risk of customer attrition had materialized. Nor has plaintiff pleaded facts to show that the risk of salesperson attrition had materialized by August 2017. Rather, when taken together the Former Employee testimony regarding attrition suggests that employee attrition was uneven across the organization during the period. Former Employees stated they experienced: 30% to 40% of attrition on their team "after the Merger", SAC ¶ 10; that their team had 100% turnover after the Merger announcement, which they believed was caused by voluntary departures, SAC ¶ 91; that 50% of the HPE salesforce left after the Merger announcement, SAC ¶ 91; 1/3 of the team that an employee began with in 2016 had left by 2018, SAC ¶ 97; that 30-40% of the employees who were at an event in 2016 were not there in 2017, SAC ¶ 97; and that 30% of their team left because of the Merger, and that while the attrition started right after the announcement of the Merger, it really started to pick up three to six months after it closed. SAC ¶ 97. The fact that there was salesperson attrition during the class period is undisputed—and was eventually publicly disclosed by Micro Focus. The facts pleaded by Plaintiff do not answer the key question, which is whether such a problem materialized by August 2017, at the time Micro Focus made these statements. Plaintiff therefore fails to plead that this statement of risk was false and misleading.

> *Third*, Plaintiff alleges that the following risk warning was misleading:
> **"Integration of HPE Software with the existing businesses carried on by the Micro Focus Group may be more time consuming and costly than anticipated.** The Micro Focus Group and HPE Software currently operate and, until Closing, will continue to operate as two separate businesses. The Merger will require the integration of the

businesses, and the success of the Group will depend, in part, on the effectiveness of the integration process. The key potential difficulties of combining the businesses following Closing include the following:

- developing, operating and integrating a large number of different technology platforms and systems, in particular integrating the IT platforms of both businesses;
- coordinating and consolidating services and operations, particularly across different service areas, regulatory systems and business cultures;
- consolidating infrastructure, procedures, systems, facilities, accounting functions, compensation structures and other policies;
- integrating the management teams and retaining and incentivizing key employees; coordinating communications with and/or the provision of services by the Group to customers of both the Micro Focus Group and HPE Software; and
- disruption to the businesses of each of the Micro Focus Group and HPE Software."

SAC ¶ 217. Plaintiff pleads that this statement was misleading because "HPE [Software] and Micro Focus were operating independently and had not tested and would not be able to properly implement the FAST system, which they intended to deploy immediately after the Merger, and the successful testing and implementation of which were necessary to realizing the efficiencies and noted increases in profit and EBITDA margins, and (ii) the merging companies had overlapping and competing product offerings that could not be rationalized and would compete with and cannibalize each other, precluding a successful integration of the two businesses." SAC ¶ 218.

Plaintiff's argument that this statement is actionable fails. Plaintiff seems to argue that the statement is misleading because Micro Focus had not yet tested FAST. But the alleged misstatement specifically discloses that HPE Software and Micro Focus are operating as separate entities and sets forth specific risks of the integration to come, including those arising from integrating the IT platforms of the businesses, which would include FAST. Nor does Plaintiff plead any facts supporting the idea that Micro Focus believed at the time, or later, that product overlap precluded the success of the merger. This risk warning is not false and misleading.

The Court therefore concludes Plaintiff has failed to plead an actionable misstatement in the Registration Statement.

e.   Duty to Disclose Trends in Customer and Salesperson Attrition: August 2017

For the same reasons that the Court concludes the risk warnings were not false or misleading, the Court also concludes Plaintiff fails to adequately plead that Plaintiff had a duty to disclose adverse trends in attrition of customers and salespersons. Plaintiff pleads such duty arises pursuant to Item 303 of Regulation S-K, 17 CFR § 229.303. Pursuant to Subsection (a)(3)(ii) of Item 303, a registrant must "[d]escribe any known trends or uncertainties . . . that the registrant reasonably expects will have a material . . . unfavorable impact on . . . revenues or income from continuing operations." "Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report with the SEC. It is not enough that it should have known of the existing trend, event, or uncertainty." *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016). For the same reason that Plaintiff failed to plead that the risk of customer and salesperson attrition materialized as of August 2017, they also failed to plead such trends had emerged at that time.

The Court therefore concludes that Plaintiff failed to plead duty to disclose pursuant to Item 303.

f.   Post-Merger Alleged Misstatements: September 7, 2017

Next, Plaintiff pleads misstatements on September 7, 2017 at a Capital Markets Day at the London Stock Exchange Conference Forum, as well as in a press release and an email to employees that was filed publicly. These alleged misstatements are not actionable. Many of the statements are optimism or puffery that no reasonable investor would find material. Among these are, for

example, Micro Focus statements that the "[c]ombined company is a **strong platform** with a **proven operating model for managing a portfolio of scale assets and is well-positioned to benefit from consolidation**"; that the combined Company's "lean operating model preserves capital and maximizes total shareholder returns **on a sustainable basis**," and "[d]espite [the] complexity of [the] transaction [Micro Focus has] continued to execute on the core business." SAC 219-220. These, and other similar statements, are too vague to be actionable.

The September 7, 2017 alleged misstatements also include forward-looking statements and statements of opinion. Plaintiff alleges it was false and misleading for a Micro Focus employee to say the following: "[r]eally, the portfolios fit together in some really strong ways, very little overlap, and where there is overlap, a great plan for how we're going to get best of both approaches and get synergies out of that, and so this will kind of be our road map for the next section." SAC at ¶ 224. But Plaintiff pleads no facts indicating that the employee did not honestly hold this belief, nor that Micro Focus did not have a plan to deal with the product overlap.

For another example, Plaintiff pleads that the following statement by Defendant Murdoch that certain aspects of Micro Focus would not change with the Merger was misleading: "One is our unequivocal and relentless commitment to delivering results. The second is this focus on delivering customer-centered innovation, focus on delivering a great customer experience. No wavering from that at all. The existing road maps will continue and will be delivered. **So we're not disrupting the product flow into the marketplace that were over 700 in the combined organizations last year**. We'll continue that and improve it as we go forward." SAC ¶ 223. Plaintiff does not plead with particularity any facts to show that these statements were objectively false or disbelieved when made.

To the extent the September 7, 2017 alleged misstatements include statements of present fact, Plaintiff has not pleaded facts showing such statements were false when made. For example, Plaintiff points to a statement by Defendant Hsu that Micro Focus has "***3,000 salespeople globally and 2,500 go-to-market partners***", "2,000 support personnel dedicated to helping our customers get the most out of the software, break-fix, etc., with industry leading NPS [Net Promotor Score (an index that measures the willingness of customers to recommend a product or services)] scores and over 2,000 professional services folks that are experts in helping our customers implement our software so they get the most out of it." SAC ¶ 227. Plaintiff pleads no facts showing these figures were false.

Finally, Plaintiff alleges that a statement from Defendant Hsu misled investors about employee attrition. Plaintiff suggests that Defendant Hsu stating he was "taken aback" by questions about turnover and employee morale, SAC ¶ 228, implied there were no such problems. In context, Defendant Hsu's comments read differently:

> "All right. Let me touch on key priorities that we have for the business over the next 2 to 3 years. And I'll hit on these over and over and over again. And already, my leadership team, my entire team -- we had an all-employee meeting earlier this week, we've gone through these and just really hammered that this is what the organization is focused on. Number one, integrating these 2 companies without disrupting our customers, and Stephen Murdoch is solely focused to making sure that we do this effectively. Number two, strengthen the go-to-market engine. . . . Third, drive customer-centered innovation in everything we do, from the first line of code that we write in product development to when we, if ever, sunset a product, everything that we do. . . In order to do this, as -- many of you actually asked a lot of questions about turnover and employee morale in the break, and I was actually somewhat taken aback. I'm in a financial community, and that was one of the first questions I got asked. But we've got to build a company that employees are excited about, want to be a part of, own and that our customers view as a strategic partner. And in a software company, all we have is our people. Our people come up with ideas that they then use a language to code that creates a product that we figure out how to somehow package." ECF No. 98-25, 10-11.

Rather than suggesting that there is no attrition problem, Defendant Hsu is discussing "key priorities" for the "next 2 to 3 years" of the Merger. These are forward-looking statements—and indeed verge on puffery. Another statement by Defendant Hsu that Plaintiff alleges is misleading is more of the same. SAC at 229. ("[T]he number one bet that we're making this year, and it will be reflected in our financial architecture is maintaining stability of the rep-customer relationship, maintaining specialization in our sales organizations around the assets that we're bringing together, and we're going to capture the synergies and operational improvements where they . . . overlap in the leadership level and in the back office support functions. But on the quota-carrying field and inside sales reps, we're going to maintain consistency and stability."). Because Plaintiff has pleaded no facts showing that Defendant Hsu did not believe these forward-looking statements when made, Plaintiff has failed to plead an actionable misstatement.

The Court therefore concludes that Plaintiff has not pleaded an actionable misstatement on September 7, 2017.

g.  Post-Merger Alleged Misstatements: January 8, 2018

The next misstatements Plaintiff alleges are on January 8, 2018, when Micro Focus reported its financial results for the six months ended October 31, 2017. Many of these are inactionable puffery. This includes statements that the company was a "strong platform with a proven operating model for managing a portfolio of scale assets and [was] well-positioned to benefit from consolidation"; that its "lean operating model preserves capital and maximizes total shareholder returns on a sustainable basis"; that "[w]e believe we have a ***strong operational and financial model*** that can continue to scale and provide excellent returns to our shareholders" and the "HPE Software transaction thesis is ***intact and strong***." SAC ¶ 235-36.

To the degree the alleged misstatements are statements of present fact, Plaintiff fails to plead falsity or explain how such facts are misleading. For example, Micro Focus stated that HPE Software assets had been migrated to a "completely new state-of-the-art IT platform (FAST) from multiple, complex legacy HP systems." SAC ¶ 239. Defendant Hsu also made a series of statements related to the progress of the Merger, including: "we're only a couple months post the completion of the transaction and we've already integrated the product teams"; "if I had to say qualitatively where we are, I feel really good about the progress and heavy-lifting that the teams have done", and "[w]e're executing against the detailed plan with 15 work streams and over 7,500 tasks have already been completed to date. And as I mentioned, one of the areas of the most significant accomplishment is standing up 70% of our revenue, which is the HPE Software business which we did in November on a completely new IT system [FAST], which is a very modern system. And we [went from] roughly 600 disparate applications to 120 in a completely modern stack." SAC ¶ 240. Plaintiff does not plead facts showing that these statements were false when made or, to the degree they are opinions, not genuinely held.

The Court concludes Plaintiff pleads no actionable misstatements on January 8, 2018.

h.  Post-Merger Alleged Misstatements: March 19, 2018

Plaintiff next alleges false and misleading statements on March 19, 2018. Among these statements are inactionable puffery, such as the repetition of the statement that "***the fundamental thesis of the HPE Software acquisition remains intact***." SAC ¶ 246. Here too, to the degree Plaintiff alleges misstatements of present fact, Plaintiff fails to plead falsity. For example, Plaintiff pleads it was a misstatement for the Company to tell investors that "the impact of the system issues is now under better control and we're seeing improvements in stability, throughput and accuracy".

SAC ¶¶ 246, 251. Plaintiff pleads no facts related to whether the issues with the Merger were intensifying or staying the same, which would be necessary to show the falsity of this statement.

Plaintiff pleads that statements by Micro Focus on March 19, 2018 that it did not expect the cost of resolving problems with FAST to exceed previous projections were false and misleading. SAC at 249 ("We do have an increase in ***temporary resource*** dealing with the IT system issues, and again, that's ***a temporary increase***. We're still – if you recall, we've talked about a $750 million cash outflow as part of the integration for exceptional balanced between IT and other integration costs. We're still comfortable with that overall number."). Plaintiff also contends that statements that Micro Focus did not anticipate that problems related to FAST, such as delays in sale and poor collection, would be long term were false and misleading. SAC ¶ 248. According to Plaintiff, these statement were false and misleading because "Defendants were aware that the resources necessary to deal with the IT system issues were not 'temporary'" and "[t]he problems with FAST were continuing and long term, preventing employees from invoicing customers and paying for rebates, and Micro Focus eventually decided to scrap FAST and create a new system altogether." Plaintiff pleads no facts in support of the assertion that Defendants were aware the costs of repairing FAST would need to be increased as of March 19, 2018 or that Micro Focus expected the accompanying problems to persist. This alleged misstatement fails.

The Court concludes Plaintiff pleads no actionable misstatements on March 19, 2018.

i.   Post-Merger Alleged Misstatements: May 16, 2018

The lone misstatement Plaintiff alleges on May 16, 2018 is also inactionable. The statement at issue was made by Defendant Murdoch: " [t]he Micro Focus team is making encouraging progress on improving both the discipline and speed of execution within the business, whilst also

sharpening the focus on our primary purpose – delivering great software products to meet the needs of our customers." SAC ¶ 252. Plaintiff pleads no facts showing that Micro Focus was not making progress on resolving the issues, nor that Defendant Murdoch did not believe this statement of optimism when made.

The Court concludes Plaintiff pleads no actionable misstatements on May 16, 2018.

j.   Post-Merger Alleged Misstatements: July 11, 2018

Plaintiff next alleges misstatements on July 11, 2018, when Micro Focus filed a release regarding its interim results for the six months ended April 30, 2018 with the SEC on Form 6-K. The alleged misstatements relate to the progress on the integration broadly, SAC ¶ 255 (*e.g.*, "***Progress on integration with IT systems stabilizing, business being simplified, sales organization re-aligned and refocused***."); addressing the problems with FAST, SAC ¶ 257-258 (*e.g.*, "***[p]rogress has been made with the system now stable and able to support the business. All core business processes can now be executed end-to-end with many now at target operating levels.*** Accomplishing this still requires many manual workarounds and as such operational effectiveness and agility are compromised. ***The backlog of customer and partner invoicing and subsequent cash collection created by these issues is being worked through and the key metrics are improving month by month in these areas.***"); and increases in hiring and decreases in employee attrition, SAC ¶ 260 ("Murdoch admitted that the normalization of attrition rates 'will take time,' but stated that '***[t]he hiring engine is now functioning effectively.***' The release also stated that '[t]he breadth and longevity of our customer relationships, a highly committed and talented team, a proven operating model and our approach to capital allocation form the foundations for our confidence in continuing to [deliver strong and consistent shareholder returns] into the future.'").

Some of these are statements of current fact: for example, "***All core business processes can now be executed end-to-end with many now at target operating levels***","***The backlog of customer and partner invoicing and subsequent cash collection created by these issues is being worked through***", and " ***[t]he bulk of the invoicing and cash allocation issues in the system have been fixed. So what we're doing today, we're issuing a very high proportion of invoices to customers.***" SAC ¶¶ 257, 269. Plaintiff has not pleaded with particularity any facts that show the falsity of these statements. But, the majority of July 11, 2018 statements are forward-looking statements about progress during the integration. Plaintiff pleads no facts showing that progress was not being made on these various issues, or that the speakers did not believe that progress was being made.

Plaintiff also pleads that other forward looking statements were misleading. For example, Plaintiff points to a statement by Defendant Murdoch that "[t]he rest of the integration, and it's easy to overlook the amount of heavy lifting now there is, but the rest of it's on track. So the progress—the project to remove our remaining dependency on the shared technical infrastructure of HPE [Software] is on track to deliver on budget and on timescale as per the original plan." SAC ¶ 271. Similarly, Plaintiff pleads it was misleading for another Micro Focus employee to "assure[] investors that while Micro Focus had faced a revenue decline that was 'significantly impacted by the transition issues that we talked about in March,' 'after the actions we've taken in Q2, we have seen a gradual tempering of the revenue decline, which does give us confidence for the medium term.'" SAC ¶ 272. Plaintiff pleads no facts that these forward-looking statements were not believed at the time when made. They are therefore unactionable.

Plaintiff therefore fails to plead an actionable misstatement on July 11, 2018.

k.  Post-Merger Alleged Misstatements: February 14, 2019

Similarly, the February 14, 2019 misstatements alleged by Plaintiff in a press release are largely forward-looking statements. For example, Micro Focus stated that it "expect[ed] further moderation of revenue decline and consequently [it was] guiding constant currency revenue for the continuing [Micro Focus Product Portfolio] business for the 12 months to 31 October 2019 to be between minus 4% to minus 6% compared to a decline of 7.1% for the 12 months ending October 31, 2018." SAC ¶ 279. Plaintiff does not allege that these figures themselves are false or the projections were not believed at the time.

Most of the other misstatements Plaintiff alleges on February 14, 2019 are statements of optimism. For example, Micro Focus stated that "[r]ecent operational improvements, evidenced by the stabilization of our revenue performance and the continued expansion in our profit margins, are encouraging signs of early progress." SAC ¶ 280. Micro Focus also stated it was "encouraged by progress over recent months and believe[d] [it was] getting back on track to focus on our outstanding customer and partner relationships." SAC ¶ 281. These are not actionable as Plaintiff has pleaded no facts showing these statements are objectively false or disbelieved

The February 14, 2019 alleged misstatements do state some current facts. Micro Focus stated, for example, that "[t]he hiring engine has been reengineered and is now functioning effectively " SAC ¶ 283. It also stated that while the systems would "still require more manual intervention than we want," they "are now stable and able to support the operations of the businesses." SAC ¶ 285. Micro Focus also referred to "revenues stabilizing". SAC ¶ 293. Plaintiff pleads no facts indicating these statements were false when made and have therefore not pleaded actionable misstatements.

Plaintiff also alleges it was false and misleading for Micro Focus to tell analysts that it would "not increase the exceptional envelope of $960 million" to repair the FAST system. SAC ¶ 291. Plaintiff pleads no facts showing this was not Micro Focus's true expectation at that time.

In sum, Plaintiff has not pleaded any actionable misstatement on February 14, 2019.

l.   Post-Merger Alleged Misstatements: February 20, 2019

Plaintiff alleges that Micro Focus made misstatements in its February 20, 2019 annual report. The alleged misstatements largely echo those on July 11, 2018, reporting on the progress towards addressing problems with the merger. *e.g.*, SAC ¶ 297 (" [t]he hiring engine has been re-engineered and is now functioning effectively. It is anticipated that the combination of more empowerment through clarity of accountability, better enablement and improved hiring and on-boarding will see attrition levels stabilise further and begin to trend down."); 298 ("***"[t]hese systems are now stable and able to support the operations of the business*** but still require more manual intervention than we want."); SAC ¶ 300 ("We are approximately a year behind where we expected to be in terms of the integration programme, and these challenges have been disruptive and difficult at times, ***but significant progress has been made in stabilising systems and people and instilling customer centric discipline. As a result, the board continues to have full confidence in the HPE Software business acquisition, the Micro Focus investment proposition, and our shareholder returns model***."). Because Plaintiff pleads no facts showing that progress was not being made on these various issues. Plaintiff fails to plead a misstatement on February 20, 2019.

m.  Post-Merger Alleged Misstatements: February 21, 2019

Plaintiff also pleads misstatements on February 21, 2019 in an annual report titled "Bridging now2 and next – Annual Report and Accounts 2018.". Therein, Micro Focus stated it

believed "the most disruptive issues experienced since completion [of the Merger] are now behind [the Company]" and that "[r]ecent operational improvements evidenced by the stabilisation of our revenue performance and the continued expansion in our profit margins, are encouraging signs of early progress." SAC ¶ 303. These statements of opinion are not actionable because Plaintiff pleads no facts indicating that they were false or disbelieved when made.

With regard to FAST, the annual report stated that "[t]hese systems are now stable and able to support the operations of the business." SAC ¶ 303. On salesperson attrition, the Report stated that "the hiring engine has been reengineered and is now functioning effectively". SAC 303. Again, Plaintiff pleads no facts indicating these statements were untrue when made. Plaintiff therefore fails to plead an actionable misstatement on February 21, 2019.

n.   Post-Merger Alleged Misstatements: July 9, 2019

The final date on which Plaintiff alleges misstatements is July 9, 2019, in a press release announcing interim results for the six months ended April 30, 2019. Micro Focus announced that its "[r]evenue performance [was] in line with guidance and full year guidance maintained at minus 4% to minus 6% on a constant currency ("CCY") basis" and stated that "[t]ransformation programmes remain on target for completion in 2020." SAC ¶ 306. Plaintiff does not plead that these statements are false—they are therefore inactionable. Micro Focus also stated that the Merger was "on track" and that Micro Focus was "making steady" or "solid progress" in various forms. SAC ¶¶ 307-09, 311. These statements are inactionable puffery or else Plaintiff has not pleaded facts showing they were false when made. Plaintiff therefore fails to plead a misstatement on July 9, 2019.

Having concluded that Plaintiff failed to plead actionable misstatements or omissions on any of the dates alleged, the Court will not proceed to the question of scienter. The Court hereby GRANTS Defendants' motion to dismiss as to the above claims.

B. Plaintiff's Sections 11, 12(a)(2), and 15 Securities Act Claims

Sections 11 and 12(a)(2) of the Securities Act impose liability on certain participants in a registered securities offering when a registration statement or prospectus contains material misstatements or omissions. 15 U.S.C. §§ 77k, 77l(a)(2). And Section 15 imposes liability on individuals or entities that "control[ ] any person liable" under Section 11 or 12. *Id.* § 77o.

The provisions are "notable both for the limitations on their scope as well as the in terrorem nature of the liability they create." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). "Issuers are subject to 'virtually absolute' liability under section 11, while the remaining potential defendants under sections 11 and 12(a)(2) may be held liable for mere negligence." *Id.* Neither scienter, reliance, nor loss causation is an element of § 11 or § 12(a)(2) claims which—unless they are premised on allegations of fraud—need not satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.*; *see also Rombach*, 355 F.3d at 171.

Plaintiff alleges that Micro Focus failed to disclose the material adverse trends in Micro Focus's sales, especially in North America, and sales-force attrition affecting that revenue, as required by Item 303 of Regulation S-K. The Court has already concluded there was no such duty in the context of the Rule 10-b claim. Whether that analysis applies here depends on the pleading standard.

When assessing the sufficiency of claims under sections 11 and 12(a)(2) of the Securities Act, the structure of the analysis is guided by a preliminary inquiry into the nature of the plaintiff's allegations. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 358. "Where the claims are 'premised on allegations of fraud,' the allegations must satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Id*. "However, if the pleading does not sound in fraud, then Rule 8(a) governs." *Id.*

Here, the Court concludes that Plaintiff's claims sound in fraud. Plaintiff pleads that Defendants' statements that allegedly violated sections 11 and 12(a)(2) are "false and misleading" and were "untrue statements of material facts". "[T]he wording and imputations of the complaint are classically associated with fraud." *Rombach,* 355 F.3d at 172 (concluding Rule 9(b) pleading standard applied when complaint said "Registration statement was 'inaccurate *and* misleading;' that it contained '*untrue* statements of material facts;' and that 'materially *false* and *misleading* written statements' were issued.")

Because the same heightened pleading standard applies here as to the Rule 10-b claim, the Court concludes that these claims fail because of the same deficiencies. Just as Plaintiff has not adequately pleaded actionable misstatements under the 10(b) analysis, it has not pleaded actionable misstatements for purposes of the Section 11 and Section 12(a)(2) claims.

In light of this conclusion the Court will not address the standing issue, or the arguments raised in the supplemental memoranda of law filed with the briefing. The Court hereby GRANTS Defendants' motion to dismiss the Section 11 and Section 12(a)(2) claims.

C.  Control Person Liability

The Court dismisses the control person claims because Plaintiff fails to allege the necessary "primary violation by the controlled person," Micro Focus. *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 581 (S.D.N.Y. 2018) (Exchange Act §20(a)); *Jones v. Party City Holdco, Inc.*, 230 F. Supp. 3d 185, 192 (S.D.N.Y. 2017) (Securities Act §15).

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is **GRANTED**. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:**         **September 29, 2020**

**ANDREW L. CARTER, JR.**

**United States District Judge**