**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MICRO FOCUS INTERNATIONAL PLC SECURITIES LITIGATION | Master File No. 1:18-cv-06763 (ALC)<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   BACKGROUND OF THE LITIGATION......................................................... 3

III.  ARGUMENT ................................................................................................... 6

    A.    The Court Should Preliminarily Approve The Proposed Settlement...................... 6

        1.    The Settlement Is The Product Of Months of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel And A Mediator ........................................................................ 8

        2.    The Proposed Settlement Is Within The Range of Possible Approval ..................................................................................... 9

        3.    The Settlement Treats All Settlement Class Members Fairly................... 12

        4.    The Settlement Does Not Excessively Compensate Plaintiff's Counsel .................................................................. 13

        5.    Lead Plaintiff Has Identified All Agreements Made In Connection With The Settlement................................................. 14

    B.    The Proposed Settlement Class Satisfies Rule 23................................................. 15

        1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) ......................................................................................... 16

        2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ..................................................................................... 20

IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ..................................................................................... 23

V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................... 24

VI.   CONCLUSION................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
　298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................16

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997)..............................................................................16, 21, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
　568 U.S. 455 (2013)...............................................................................................19

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
　770 F.2d 328 (2d Cir. 1985).................................................................................22

*In re Canadian Superior Sec. Litig.*,
　2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011) .......................................................11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
　504 F.3d 229 (2d Cir. 2007)...................................................................................18

*In re China Sunergy Sec. Litig.*,
　2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................11

*In re Citigroup Inc. Bond Litig.*,
　296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................................6

*Citiline Holdings, Inc. v. iStar Fin., Inc.*,
　No. 1:08-cv-03612-RJS (S.D.N.Y. Apr. 5, 2013), ECF No. 127 ............................14

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974).....................................................................................7

*City of Providence v. Aeropostale, Inc.*,
　2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).............................................................8, 24

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995)....................................................................................16

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)......................................................................................8

*Denney v. Deutsche Bank AG*,
　443 F.3d 253 (2d Cir. 2006)..................................................................................16

*Dietrich v. Bauer*,
   192 F.R.D. 119 (S.D.N.Y. 2000) ...........................................................................17

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)...................................................................................19

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ..........................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................16

*In re Globalstar Sec. Litig.*,
   2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ..........................................................17

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ..........................................................................7, 9

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ...........................................................................16

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ...........................................................................21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................18

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..............................................................................24

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...........................................................................21

*In re Micro Focus, PLC Sec. Litig.*,
   Master File 18CIV01459 (Cal. Super. Ct. San Mateo Cnty) ..................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................................17

*Pa. Ave. Funds v. Inyx Inc.*,
   2011 WL 2732544 (S.D.N.Y. July 5, 2011) ...........................................................17

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................17

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ......................................................................19

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ...........................................................................20

*In re Sadia S.A. Sec. Litig.*,
    2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ................................................14

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ...................................................................18

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ...............................................20

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...............................................19

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) ...........................................................................22

*In re Tower Grp. Int'l, Ltd. Sec. Litig.*,
    No. 13-cv-05852 (AT), (S.D.N.Y. Nov. 23, 2015), ECF No. 178 .................14

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................................9

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) .............................................................19, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................6, 22, 24

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...............................................24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .............................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ..............................................................................................16

Fed. R. Civ. P. 23(a)(2) ..........................................................................................17

Fed. R. Civ. P. 23(a)(3) ..........................................................................................18

iv

Fed. R. Civ. P. 23(a)(4)......................................................................................................19

Fed. R. Civ. P. 23(b)(3)..................................................................................................20, 21

Fed. R. Civ. P. 23(e)(1)...................................................................................................6, 9

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................2, 7, 15

Fed. R. Civ. P. 23(e)(2)...................................................................................................6, 7

Court-appointed Lead Plaintiff, Iron Workers Local No. 25 Pension Fund ("Lead Plaintiff" or "Iron Workers"), on behalf of itself and the Settlement Class (defined below), has reached a proposed settlement of this securities class action (the "Action") with Defendants for $15,000,000 in cash, which is subject to approval of the Court (the "Settlement").[1]

In this unopposed motion, Lead Plaintiff respectfully asks only that the Court preliminarily approve the Settlement so that notice may be provided to the Settlement Class. Specifically, Lead Plaintiff respectfully requests that the Court enter the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order"), which will grant preliminary approval of the Settlement; approve the form and manner of providing notice to the Settlement Class; and schedule a timely hearing at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.

## I.    PRELIMINARY STATEMENT

The Parties have agreed to settle all claims in the Action in exchange for a cash payment of $15,000,000 that Defendant Micro Focus International PLC ("Micro Focus" or the "Company") will pay or cause to be paid on behalf of all Defendants. Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlement and authorize notice of the Settlement to members of the Settlement Class as provided under Fed. R. Civ. P. 23(e)(1). The proposed Settlement is the product of nearly two years of litigation and extensive, arm's-length negotiations supervised by an experienced mediator. It represents a favorable result for the Settlement Class, particularly in light

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 16, 2021 (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of James A. Harrod (the "Harrod Declaration") filed herewith.

of the dismissal of the Action and the additional challenges that Lead Plaintiff faced even if successful on appeal. As discussed below, the Settlement Class meets all the requirements for certification under Rules 23(a) and (b)(3). The Court, therefore, "will likely be able to" finally approve the Settlement under Rule 23(e)(2) and certify the Settlement Class. Fed. R. Civ. P. 23(e)(1)(B). Accordingly, Lead Plaintiff respectfully submits that preliminary approval is warranted.

By granting Lead Plaintiff's unopposed motion and entering the proposed Preliminary Approval Order, the Court will begin the settlement approval process by setting a date for a final approval hearing (the "Settlement Fairness Hearing") and authorizing dissemination of notice of the Settlement and of the Settlement Fairness Hearing to investors who are members of the Settlement Class. The proposed notice will also advise Settlement Class Members of their rights to (among other things) object to the Settlement or "opt out" of the Settlement Class. At the Settlement Fairness Hearing, the Court will then consider whether to grant final approval to the Settlement as fair, reasonable, and adequate, and whether to approve Lead Counsel's fee and expense application.

To facilitate the approval process, the proposed Preliminary Approval Order (i) preliminarily approves the Settlement as provided in the Stipulation; (ii) approves the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) approves the procedures for disseminating the Notice, Claim Form, and Summary Notice provided in the Preliminary Approval Order as complying with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) sets a date and time for the Settlement Fairness Hearing.

## II.    BACKGROUND OF THE LITIGATION

On May 23, 2018, the initial securities class action complaint brought on behalf of persons or entities who purchased or acquired Micro Focus ADRs was filed in United States District Court for the Northern District of California (the "N.D. Cal."). Upon stipulation of the parties, on July 25, 2018, the N.D. Cal. transferred the action to this Court.

By Order dated September 11, 2018, the Court appointed Iron Workers to serve as Lead Plaintiff for the action; approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the putative class; and ordered that the action be captioned *In re Micro Focus Systems PLC Securities Litigation*, Master File No. 1:18-cv-06763 (ALC) (the "Action") and that any subsequently filed, removed, or transferred actions related to the claims asserted in the Action be consolidated for all purposes.

On November 9, 2018, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") asserting securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission Rule 10b-5, and claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").

On January 22, 2019, Defendants moved to dismiss the Amended Complaint. On September 9, 2019, after full briefing of Defendants' motions to dismiss the Amended Complaint, the Court entered an Order granting Lead Plaintiff leave to file a second amended complaint and denying as moot Defendants' motions to dismiss the Amended Complaint.

On September 30, 2019, Lead Plaintiff filed its Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint" or "Complaint"). The Second Amended Complaint alleged securities fraud claims under § 10(b) of the Exchange Act and Rule 10b-5 against Micro Focus and Christopher Hsu, Stephen Murdoch, Mike Phillips,

and Kevin Loosemore (collectively, the "Executive Defendants"), and claims under § 20(a) of the Exchange Act against the Executive Defendants. The Second Amended Complaint also alleged claims under § 11 of the Securities Act against Micro Focus, the Executive Defendants, and Nils Brauckmann, Karen Slatford, Richard Atkins, Amanda Brown, Silke Scheiber, Darren Roos, John Schultz, and Giselle Manon (collectively, the "Director Defendants"); claims under § 12(a)(2) of the Securities Act against Micro Focus; and claims under § 15 of the Securities Act against the Executive Defendants (other than Defendant Hsu) and the Director Defendants (other than Defendant Schultz). The Second Amended Complaint alleged that Defendants made materially false statements and misleading omissions concerning Micro Focus's September 1, 2017 Merger with the software business of Hewlett Packard Enterprise ("HPE Software"), in which the Company issued approximately 222 million Micro Focus ADRs to former HPE shareholders. Among other things, Lead Plaintiff alleged that undisclosed problems at both Micro Focus and HPE Software contradicted the positive public statements made by Defendants in support of the Merger before and after it closed. Lead Plaintiff also alleged that, due to these false and misleading statements, the price of Micro Focus ADRs was artificially inflated during the Class Period, but declined (causing investors to suffer damages) as the truth was revealed.

On November 4, 2019, Defendants moved to dismiss the Second Amended Complaint. On September 29, 2020, after full briefing, the Court granted Defendants' motions to dismiss on the basis that the Second Amended Complaint did not adequately allege that Defendants made materially false statements or misleading omissions. The Court did not reach Defendants' other arguments in support of their motions to dismiss.

On October 27, 2020, Lead Plaintiff filed a notice of appeal seeking review by the United States Court of Appeals for the Second Circuit (the "Second Circuit") of the Court's September

29, 2020 Order granting the motions to dismiss the Complaint. On February 4, 2021, Lead Plaintiff filed its opening brief on the appeal to the Second Circuit.

While the appeal was pending, the Parties discussed the possibility of resolving the litigation through settlement and agreed to mediation before Jed D. Melnick, Esq. of JAMS. In advance of the mediation, Defendants produced the Micro Focus insurance policies requested by Lead Plaintiff, subject to the Parties' Mediation Confidentiality Agreement, and the Parties exchanged detailed mediation statements and exhibits that were also submitted to Mr. Melnick. A full-day remote mediation session with Mr. Melnick was held on March 17, 2021. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Mr. Melnick, which resulted in an agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet") executed on March 23, 2021. The Term Sheet stated, among other things, the Parties' agreement to settle and release all claims against Defendants in return for a cash payment of $15,000,000 for the benefit of the Settlement Class, subject to specified terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

On April 29, 2021, in light of their agreement in principle to settle, the Parties filed with the Second Circuit a stipulation under Second Circuit Local Rule 42.1 (the "Local Rule 42.1 Stipulation") providing for dismissal of the appeal without prejudice to Lead Plaintiff's right to reinstate the appeal by filing and serving an appropriate notice. The Parties' Local Rule 42.1 Stipulation was "so ordered" by the Second Circuit on April 30, 2021, providing for the filing of this motion before Your Honor.

On June 16, 2021, the Parties executed the "long-form" Stipulation embodying the Parties' agreement to settle all claims at issue in exchange for $15,000,000 in cash. *See* Exhibit 1 to the Harrod Declaration.

## III.    ARGUMENT

The proposed Settlement merits preliminary approval. It provides a significant benefit for the Settlement Class in the face of the substantial costs and risks associated with continued litigation of the Action. It is also entitled to an initial presumption of fairness and adequacy, as it is the result of arm's-length negotiations by experienced counsel supervised by an independent mediator.

### A.    The Court Should Preliminarily Approve The Proposed Settlement

Federal Rule of Civil Procedure 23(e) provides that a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013). The settlement of class action litigation is favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.' The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations omitted).

Judicial approval of a class action settlement is a two-step process. *First*, the Court preliminarily reviews the proposed settlement's terms to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under amendments to Rule 23(e) that became effective on December 1, 2018, a court should grant preliminary approval upon a finding that it "will likely be able" to (i) finally approve

the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law that provided that courts should grant preliminary approval "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted).

In considering *final* approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[2] Because these factors are satisfied here, final approval of the Settlement and certification of the Settlement Class are both "likely," and preliminary approval is merited. Fed. R. Civ. P. 23(e)(1)(B).

---

[2] In connection with final approval, the Court will also be asked to consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also* Fed. R. Civ. P. 23(e)(2) Advisory Committee Note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Courts of Appeals).

### 1.    The Settlement Is The Product Of Months of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel And A Mediator

The fact that the Parties reached the Settlement after mediation and arm's-length negotiations between experienced counsel creates a presumption of its fairness. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("initial presumption of fairness and adequacy applies" where Settlement was reached "by experienced, fully-informed counsel after arm's-length negotiations"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

As noted above, while Lead Plaintiff's appeal of the Court's Order dismissing the Action was pending, the Parties participated in mediation before Jed D. Melnick, Esq. of JAMS, an experienced mediator of complex litigation. In advance of the scheduled mediation session, Defendants produced Company insurance policies to Lead Plaintiff, and the Parties exchanged detailed mediation statements and exhibits. The full-day remote mediation session with Mr. Melnick was held on March 17, 2021. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Mr. Melnick, which culminated in the agreement to settle the Action for $15 million in cash. The arm's-length negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

In addition, Lead Counsel, which is a nationwide leader in securities class actions and has a thorough understanding of the factual and legal issues in the Action, supports the Settlement. Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re NASDAQ Mkt.-Makers*

8

*Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (citation omitted). Moreover, Lead Plaintiff, an institutional investor of the type favored by Congress to lead securities class actions under the PSLRA, supervised this litigation throughout and recommends that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'") (citation omitted).

### 2.    The Proposed Settlement Is Within The Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement is "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87 (citation omitted). Because the proposed $15 million Settlement represents an excellent recovery for the Settlement Class in light of the dismissal of the Action, the uncertainty of Lead Plaintiff's appeal, and the risks of non-recovery even if the appeal is successful, the Settlement falls well within the range of possible approval.

Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit. However, the Action has been dismissed in its entirety based on the Court's conclusion that the Complaint does not adequately allege any actionable false or misleading statements or omissions. Lead Plaintiff's appeal of that ruling to the Second Circuit was pending when the agreement to settle was reached. Lead Plaintiff believes that it presented meritorious arguments for reversal of the dismissal in its opening brief on appeal, but if there were no Settlement and the appeal were unsuccessful, the Settlement Class would not obtain any recovery in this Action.

Moreover, even if the appeal succeeded, upon remand, Lead Plaintiff and the Settlement Class faced additional, substantial hurdles to establishing liability and damages. Throughout, Defendants argued that they adequately disclosed the risks and problems affecting Micro Focus and HPE Software both before and after the Merger and did not violate the federal securities laws in any way. Lead Plaintiff, as the party with the burden of proof, faced challenges of proving through admissible evidence that Defendants' statements were false or misleading when made. In addition, Lead Plaintiff faced risks in proving that Defendants made the alleged misstatements with the requisite scienter. Finally, with respect to the Class's claims under the Exchange Act, Lead Plaintiff would also have to prove that disclosure of the alleged misstatements, rather than other news about Micro Focus's business, caused the investors' losses, which would have presented additional challenges. With respect to the Class's claims under the Securities Act, Defendants would have the opportunity to seek to prove an affirmative defense that the Class's losses were not caused by any false or misleading statements in the registration statement for the Merger. Defendants would have further argued that Lead Plaintiff lacks standing to bring the Securities Act claims because Lead Plaintiff acquired only Micro Focus ADRs, not the underlying Micro Focus ordinary shares, and the alleged false statements were only in a registration statement for the ordinary shares, not in the separate registration statement for the ADRs. Relatedly, Defendants would have argued that former HPE shareholders' claims under the Securities Act, in connection with their receipt of Micro Focus ADRs, which were the result of a compulsory exchange in connection with acquisition of the HPE assets, failed to meet the statutory requirements because those transactions were not a purchase or acquisition. In order to obtain a litigated judgment, Lead Plaintiff would have to prevail on all these issues and at several stages of the litigation beyond the current appeal, including on any additional pleading motions upon

remand, a motion for summary judgment, a motion for class certification, and at trial. Even if Lead Plaintiff succeeded at trial, Defendants would likely appeal from that verdict. Thus, any recovery through litigation was highly uncertain in this case and could not have been achieved without incurring substantial costs and considerable delay of at least several years.

The Settlement is also reasonable in light of the damages that could be reasonably established at trial. Based on consultation with a financial expert, Lead Plaintiff estimates the Class's reasonably likely possible damages at approximately $235 million. The $235 million estimate assumes that Lead Plaintiff would prevail at trial on the claims for which we believe there are the strongest facts supporting both the falsity of Defendants' statements and Defendants' knowing or reckless disregard of the statements' falsity. This estimate also assumes that we would succeed in proving that these false statements caused Micro Focus's stock-price declines on the relevant dates when the truth about the false statements was revealed, and that we would succeed in "disaggregating" portions of the stock-price declines that were caused by the false statements from portions that were caused by other bad news on those dates.

The $15 million Settlement thus represents approximately 6.4% of the Class's reasonably likely recoverable damages assuming victory at trial. This represents a good result in the face of this Action's significant litigation risk. *See In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (approving settlement representing 8.5% of maximum damages, which court noted "exceed[s] the average recovery in shareholder litigation"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses") (citation omitted).

Given these risks, the proposed $15 million Settlement thus represents a favorable "bird in the hand" that warrants issuance of notice and the scheduling of a final Settlement Fairness Hearing.

### 3.    The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all Settlement Class Members will receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Fairness Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," which is stated in full in the Notice). Lead Counsel developed the Plan in consultation with Lead Plaintiff's damages expert. Because claims were asserted in the Action under both the Exchange Act and the Securities Act, the Plan calculates "Recognized Loss Amounts" under both statutes. Under the Plan, all purchases and acquisitions of Micro Focus ADRs during the Class Period are potentially eligible for compensation based on claims asserted under the Exchange Act. Claimants who purchased Micro Focus ADRs during the Class Period will have their "Exchange Act Loss Amount" calculated based on the difference between the artificial inflation in the security on the date of purchase and the date of sale, or the difference between the purchase price and the sale price—the traditional method for measuring damages under § 10(b) of the Exchange Act. In addition, Micro Focus ADRs acquired by former HPE shareholders in, or traceable to, Micro Focus's Merger with HPE Software are also potentially eligible for compensation based on claims asserted under the Securities Act. Eligible claimants will have their "Securities Act Loss Amount" calculated based on the statutory measure of damages provided under § 11(e) of the Securities Act. If a claimant has an Exchange Act Loss Amount and a Securities Act Loss Amount for the same transaction in

Micro Focus ADRs, the larger of the two amounts will be used to calculate the claimant's Recognized Claim under the Plan.

Under the Plan, the sum of a claimant's Recognized Loss Amounts for all purchases of Micro Focus ADRs in the Class Period is the claimant's "Recognized Claim," and the Net Settlement Fund will be allocated pro rata to Authorized Claimants based on the relative size of their Recognized Claims. The Claims Administrator will calculate claimants' Recognized Loss Amounts using the transaction information provided to it by claimants in their Claim Forms. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, Lead Plaintiff will seek the Court's approval for the proposed distribution. The Claims Administrator will then make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional distributions until doing so is no longer cost effective. At that time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Settlement Class Members and merits approval at the Settlement Fairness Hearing.

### 4. The Settlement Does Not Excessively Compensate Plaintiff's Counsel

The proposed Settlement also does not grant excessive compensation to Plaintiff's Counsel.[3] The Settlement does not provide for *any* specific award to Plaintiff's Counsel, and Lead Counsel will be compensated solely out of the Settlement Fund as may be approved by the Court.

---

[3] Plaintiff's Counsel consists of Lead Counsel Bernstein Litowitz and additional counsel for Lead Plaintiff, Asher Kelly and Hessian & McKasy, P.A. As disclosed in the Notice, Lead Counsel has fee or work sharing agreements with Asher Kelly and Hessian & McKasy, P.A, and Lead Counsel

In Lead Counsel's fee and expense application, Lead Counsel will seek a fee of no more than 25% of the Settlement Fund for all Plaintiff's Counsel—an amount that is well within the percentage range that courts in the Second Circuit approve in securities class actions with comparable recoveries. *See, e.g.*, *In re Tower Grp. Int'l, Ltd. Sec. Litig.*, No. 13-cv-05852 (AT), slip op. at 2 (S.D.N.Y. Nov. 23, 2015), ECF No. 178 (awarding 25% of $20.5 million settlement) (Ex. 2 to Harrod Declaration); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013), ECF No. 127 (awarding 30% of $29 million settlement) (Ex. 3 to Harrod Declaration); *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement fund). Lead Counsel will also seek payment of Litigation Expenses incurred in the institution, prosecution, and resolution of the Action, in an amount not to exceed $250,000.

Lead Counsel's fee and expense application will be filed with the Court, and all supporting papers will also be posted on a website (the "Settlement Website") where Settlement Class Members can review them, as provided by the Preliminary Approval Order. By granting preliminary approval, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided de novo at the Settlement Fairness Hearing.

### 5.     Lead Plaintiff Has Identified All Agreements Made In Connection With The Settlement

In addition to the Stipulation, Lead Plaintiff and Micro Focus have entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class

---

will compensate those firms from the attorneys' fees that Lead Counsel receives in this Action in an amount commensurate with those firms' work in this litigation that was undertaken at the specific direction of Lead Counsel for the benefit of the Class.

(opt-outs). *See* Stipulation ¶ 37. This agreement establishes the conditions under which Micro Focus may terminate the Settlement if the opt-outs exceed an agreed-upon threshold. As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement. In accordance with its terms, the Supplemental Agreement may be submitted to the Court in camera.

**B.    The Proposed Settlement Class Satisfies Rule 23**

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> all persons or entities who purchased or otherwise acquired the American Depositary Shares ("ADSs") or American Depositary Receipts ("ADRs") of Micro Focus, or rights to receive such ADSs or ADRs, during the period from September 1, 2017 through August 28, 2019 (the "Class Period"), or pursuant or traceable to Micro Focus's Registration Statement and Prospectus (Registration No. 333-219678) or Micro Focus's Form F-6 (Reg. Nos. 333-219677 and 333-220120), issued in connection with Micro Focus's merger with Hewlett Packard Enterprise Company's software business (the "Merger") on or about September 1, 2017, and who were allegedly damaged by such purchase or acquisition.

Stipulation ¶ 1(ss).[4]

---

[4] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who was an Officer or director of Micro Focus during the Class Period and any members of their Immediate Family; (iv) any parent, subsidiary, or affiliate of Micro Focus; (v) any firm, trust, corporation, or other entity in which Defendants or any other excluded person or entity has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion in accordance with the requirements set by the Court or whose request for exclusion is otherwise accepted by the Court. Stipulation ¶ 1(ss).

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011) (citation omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As shown below, all applicable requirements of Rule 23(a) and Rule 23(b)(3) are met here.

### 1.     The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a)     The Settlement Class Satisfies Numerosity

In this Circuit, numerosity is presumed when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). To satisfy numerosity, plaintiffs need not provide "a precise calculation of the number of class members," but instead "'may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class.'"

16

*Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000) (citations omitted). Accordingly, "courts in this district have certified plaintiff classes based on the volume of outstanding shares." *Pa. Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011).

Here, the proposed Settlement Class easily satisfies the numerosity requirement. In the Merger, Micro Focus issued approximately 222 million Micro Focus ADRs, and the ADRs were actively traded on the New York Stock Exchange during the Class Period. Numerosity is thus readily established here. *See, e.g.*, *id.* (certifying class where "27 million shares of common stock [were] outstanding and not owned by [company] insiders" during class period).

### b)    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities cases like this one easily satisfy commonality, which is met where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (citation omitted); *see also In re Globalstar Sec. Litig.*, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading [and] whether those statements violated the federal securities laws[.]"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.") (citation omitted).

Here, the common questions of law and fact include:

- Whether Defendants violated the Securities Act or the Exchange Act;

- Whether Defendants made false or misleading statements or omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- Whether the Executive Defendants acted with scienter;

- Whether any of alleged misstatements would be material to a reasonable investor;

- Whether the Executive Defendants or Director Defendants are individually liable for the alleged misrepresentations and omissions; and

- Whether Settlement Class Members suffered damages, and if so, the extent and appropriate measure of damages.

Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

        **c)**     **Lead Plaintiff's Claims Are Typical Of Those Of The Settlement Class**

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (citation omitted); *accord In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010). "Typical does not mean identical." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.* Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.*

Here, the alleged injuries to Lead Plaintiff and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. Thus, Lead Plaintiff "ha[s] the incentive to prove all

elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (citation omitted). The typicality requirement is, therefore, satisfied. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

<b>d)      Lead Plaintiff Will Fairly And Adequately Protect The Settlement<br>Class</b>

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor looks to (i) whether the proposed class representatives' claims conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014). Both prongs of the adequacy test are met here.

First, there is no conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and other Settlement Class Members purchased or acquired Micro Focus ADRs during the Class Period and were all injured by the same alleged misstatements. If Lead Plaintiff were to prove its claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Lead Plaintiff and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members

19

share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d at 291).

Second, Lead Plaintiff has shown its commitment to this case by retaining qualified counsel to vigorously litigate it. Lead Counsel Bernstein Litowitz has extensive experience and expertise litigating securities class action cases. *See* ECF No. 16-3 (Bernstein Litowitz firm resume). Accordingly, Rule 23(a)(4) is satisfied.[5]

### 2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets these requirements.

### a)    Common Legal And Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation

---

[5] Exhibit 4 to the Harrod Declaration is a copy of an order in an unrelated action where Bernstein Litowitz has been serving as Lead Counsel for SEB Investment Management AB, and Class Counsel for the certified Class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). As reflected in the order, counsel for a competing lead plaintiff movant (which was not appointed) raised questions about Bernstein Litowitz's hiring of a former employee of the lead plaintiff (SEB). Following discovery and extensive briefing, the court found that the evidence did not establish a *quid pro quo*, and allowed Bernstein Litowitz to continue as Class Counsel. *See id*. at *1-2. The court nevertheless ordered Bernstein Litowitz to bring the order to the attention of any court in which Bernstein Litowitz seeks appointment as class counsel. *See id.* at *2. Since the formal appointment of class counsel under Rule 23 is deferred to this Court's ruling at the final approval stage, Lead Counsel does not believe that the issue raised by the court in *Symantec* is currently joined, but is providing the order to the Court in an abundance of caution.

omitted). Here, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240 (citation omitted). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id*. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem,* 521 U.S. at 625.

The core factual and legal questions in the Action are common to all Class members: (i) was there an untrue statement or omission?; and (ii) if so, was it objectively material? *See, e.g*., *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 238 (S.D.N.Y. 2015); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008).

<b>b)    A Class Action Is Superior To Other Methods Of Adjudication</b>

Rule 23(b)(3) provides the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, there is no evidence that putative Class members desire to bring separate individual actions, and the Parties are unaware of any individual investor securities litigation involving the same issues. To the best of Lead Counsel's knowledge, the only other action involving any of the claims brought by Lead Plaintiff in this Action is a purported class action in California state court alleging claims under the Securities Act that overlap with the Securities Act claims in this Action. *See In re Micro Focus, PLC Sec. Litig.*, Master File 18CIV01459 (Cal. Super. Ct. San Mateo Cnty).

The plaintiffs in the California state court action will receive notice of the proposed Settlement in this Action and will have the right either to remain in the proposed Settlement Class

or to opt out of the proposed Settlement Class and pursue their claims individually if the Settlement here is approved. It is well settled that this Court has the authority to release the purported class claims in the state court action if this Court approves the proposed Settlement. *See, e.g.*, *Wal–Mart*, 396 F.3d at 108 ("Class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims.") (citation omitted); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 336-38 (2d Cir. 1985) (sustaining district court's injunction against prosecution of parallel state-court actions where approval of federal class-action settlements was pending, and noting that federal settlements could properly release the claims brought in state court); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("As long as the overall settlement is found to be fair and class members were given sufficient notice and opportunity to object to the fairness of the release, we see no reason why the judgment upon settlement cannot bar a claim that would have to be based on the identical factual predicate as that underlying the claims in the settled class action.") (footnote omitted).

　　　　If the state court plaintiffs choose to remain in the proposed Settlement Class here, they will have the right to object to final approval of the Settlement and to file claims in the Settlement if it is approved. Thus, their rights will be fully protected by preliminary approval of the proposed Settlement whether they choose to remain in the Settlement Class or to opt out. And for present purposes, their filing of a separate class action does not indicate that the claims are not suited for class treatment or that many members of the proposed Settlement Class want to litigate their claims individually.

　　　　Furthermore, it is desirable to concentrate the claims in this Court as Micro Focus's ADRs traded on the New York Stock Exchange, which is located in this District, and the Court is already

familiar with the factual and legal issues in the case. Finally, since this is a request for class certification only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as posting the Notice and the Claim Form on a website to be developed for the Settlement.[6] The Claims Administrator will utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Settlement Class Members of (i) the pendency of the class action, (ii) the essential terms of the Settlement, and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Fairness Hearing and state the procedures for objecting to the Settlement, the proposed Plan of Allocation, and the motion for attorneys' fees and expenses and for requesting exclusion. The Summary Notice will be published in *Investor's Business Daily* and transmitted via PR Newswire.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. The Notice contains all the information required by Rule 23(c)(2)(B), S.D.N.Y. Local Rule 23.1, and the PSLRA and will "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to

---

[6] Lead Plaintiff requests that the Court approve retention of A.B. Data, Ltd. ("A.B. Data"), as the Claims Administrator for this case. A.B. Data has successfully administered numerous complex securities class action settlements in this District and elsewhere.

them." *Wal-Mart*, 396 F.3d at 114 (citation omitted). The manner of providing notice represents

the best notice practicable under the circumstances and satisfies due process and Rule 23. *See City*

*of Providence*, 2014 WL 1883494, at *2; *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D.

Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20,

2008). Lead Plaintiff respectfully requests that the proposed notice procedures be approved.

## V.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

The Parties respectfully propose the following schedule for proceeding with final approval

of the Settlement. If the Court agrees, the Parties request that Court schedule the Settlement

Fairness Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at

the Court's earliest convenience after that date. The illustrative dates provided below assume that

the Court enters the Preliminary Approval Order by June 25, 2021, and sets the Settlement Fairness

Hearing for on or about October 13, 2021. Please note that the Court need only enter the date of

the Settlement Fairness Hearing at paragraph 5 of the accompanying proposed Preliminary

Approval Order, as all other dates or deadlines referenced below will be set based on either (a) the

date of entry of the Preliminary Approval Order or (b) the date chosen by the Court for the

Settlement Fairness Hearing.

| **Event** | **Proposed Timing** | **Example Date** |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") | No later than 20 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶ 7(b)) | July 26, 2021 |
| Deadline for publishing the Summary Notice | No later than 10 business days after the Notice Date (Preliminary Approval Order ¶ 7(d)) | August 9, 2021 |

| Event | Proposed Timing | Example Date |
|---|---|---|
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses) | 35 calendar days before the date set for the Settlement Fairness Hearing (Preliminary Approval Order ¶ 27) | September 8, 2021 |
| Deadline for receipt of requests for exclusion or objections | 21 calendar days before the date set for the Settlement Fairness Hearing (Preliminary Approval Order ¶¶ 14, 18) | September 22, 2021 |
| Deadline for filing reply papers | 7 calendar days before the Settlement Fairness Hearing (Preliminary Approval Order ¶ 27) | October 6, 2021 |
| Settlement Fairness Hearing | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 5) | October 13, 2021 |
| Postmark deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Preliminary Approval Order ¶ 11) | November 23, 2021 |

## VI.    CONCLUSION

For the forgoing reasons, Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the proposed Settlement, (ii) approve the proposed form and manner of notice to putative Settlement Class Members, and (iii) schedule a date and time for the Settlement Fairness Hearing to consider final approval of the Settlement and related matters.

Dated: June 17, 2021                    Respectfully submitted,

/s/ James A. Harrod
James A. Harrod
Jai Chandrasekhar
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
jim.harrod@blbglaw.com

25

jai@blbglaw.com

*Counsel for Lead Plaintiff Iron Workers'
Local No. 25 Pension Fund and Lead
Counsel for the Class*

William A. Cumming
**HESSIAN & MCKASY P.A.**
3700 RBC Plaza
60 S. 6th Street
Minneapolis, MN 55402
Telephone: (612) 746-5770
wcumming@hessianmckasy.com

Michael J. Asher
Jacqui Asher Kelly
**ASHER KELLY**
25800 Northwestern Highway, Suite 1100
Southfield, MI 48075
Telephone: (248) 746-2728
masher@asherkellylaw.com
jkelly@asherkelly.com

*Additional Counsel for Lead Plaintiff Iron
Workers' Local No. 25 Pension Fund*